YOUNG, Respondent, vs. MILWAUKEE GAS LIGHT COMPANY, Appellant.

*September 9—September 24, 1907.*

*Master and servant: Injuries to servant: Foreman's negligence: Evidence: Instructions to jury: Incompetency of foreman: Prejudicial error: Burden of proof: Requested instructions: Proximate cause: Contributory negligence: Assumption of risk.*

1. In an action by a servant for personal injuries alleged to have been caused by the negligence and incompetency of the master's foreman, in setting a gin pole without sufficiently securing the pole at its base, evidence of different acts of the foreman, stated in the opinion, shown to be in the line of his duty as foreman and tending to throw light upon the question of his fitness and competency to perform them, was *held* properly submitted to the jury.
2. In such case evidence that the master's chief engineer and superintendent had observed how the foreman had performed his duties, including the acts stated in the opinion, and that they had power to remove him and fill his place as foreman, is *held* sufficient to charge those who had power to discharge the foreman with knowledge of his incompetency, and hence that the defendant was also chargeable with like knowledge.
3. In an action by a servant for personal injuries alleged to have been caused by the negligence and incompetency of the master's foreman, an instruction, "Incompetency in the law of negligence means want of ability suitable to the task, either as regards natural qualities or experience, or deficiency of dispo-

sition, or want of disposition to use one's experience and abilities properly. Incompetency may exist not alone in physical or mental attributes, but in the disposition with which a person performs his duties. And though he may be physically and mentally able to do all that is required of him, his disposition toward his work, and toward his employer, and toward his fellow-servants, may make him an incompetent man," is *held* applicable to the issues and to embody a correct statement of the law, and not open to the criticism of being misleading in that it was a mere general statement of an abstract proposition of law, and omitted to inform the jury what constituted incompetency in the law of negligence as applied to the facts adduced in evidence.

4. Where, in an action by a servant for personal injuries alleged to have been caused by the negligence and incompetency of the master's foreman, the jury find that defendant had actual knowledge of such incompetency, no prejudicial error can result from an instruction to the jury on the subject of defendant's constructive notice of the foreman's incompetency.

5. In an action by a servant for personal injuries alleged to have been caused by the incompetency of the master's foreman in setting a gin pole, the court instructed the jury that the plaintiff had the burden of establishing such incompetency and that it must be shown by a preponderance of the evidence, and fully explained what is meant by the preponderance of the evidence in the trial of cases. *Held*, that such instruction properly covered every element pertinent to the issue involved and embraced in a requested instruction, in substance that, if the evidence preponderated to the effect that the foreman knew how to set the gin pole properly on the occasion of the injury, then inquiry as to his competency must be answered in the affirmative.

6. In such case a requested instruction, in substance, that knowledge by the defendant of one or two negligent acts of the foreman while engaged in similar work was not knowledge that he was incompetent to do the work in which he was engaged at the time of the accident, in that its phraseology included only negligent acts of the foreman and thus excluded acts due to incompetency respecting his duties, if submitted as requested, would erroneously have restricted the effect of the evidence tending to show that he imperiled the safety of those working under him to proof of his negligence instead of incompetency, and hence was properly refused.

7. In an action by a servant for personal injuries alleged to have been caused by the negligence and incompetency of the master's

foreman, the court submitted as one question of the special verdict an inquiry whether the failure of the foreman to exercise ordinary care, coupled with his incompetency, was the proximate cause of plaintiff's injury, and instructed the jury that they would not be justified in answering affirmatively by merely finding that the foreman failed to exercise ordinary care, nor by the mere finding that he was incompetent, but that if they found that plaintiff's injury was caused by an act of the foreman, "an incompetent servant," and that such injury was the result of such incompetency, then if they found that that was the proximate cause of the injury they should answer the question "Yes." *Held*, that the question as framed and submitted was not open to the criticism of being too indefinite and uncertain to determine the issue of proximate cause, since an affirmative answer to the question, under the instruction of the court, could only follow upon the finding by the jury that the foreman's incompetency was the proximate cause of plaintiff's injury.

8. In an action by a servant for personal injuries alleged to have been caused by the negligence and incompetency of the master's foreman, the evidence, stated in the opinion, is *held* to be sufficient to warrant the jury in finding such incompetency and the master's knowledge thereof.

9. In such case it was *held* that there was no evidence in the record to furnish the basis of a finding that plaintiff was guilty of contributory negligence, or that he assumed the risk incident to the negligence charged.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

This is an action for personal injuries alleged to have been caused by the negligence of the defendant in failing to provide reasonably competent servants, in that it employed a foreman or employee in charge of certain work who was incompetent to perform the duties imposed on him by the defendant. On November 14, 1904, the plaintiff was one of a crew of men engaged under the direction of Edward Demorrow in hoisting a smokestack to the top of a building called the "steels," one of a row of low flat buildings about fourteen or fifteen feet high. The top of the building was arched, except for an edge about twelve or fourteen inches

wide. A gin pole with four guy wires had been placed on a
steel plate, called the stack plate, about two feet wide and four
or five feet long. This plate had an oval hole with a collar
about it, onto which the stack fitted. The stack lay on a tank
some five or six feet from the ground, whence it was to be
raised to and placed on the stack plate. The gin pole was 6x6,
thirty-five feet long; the pulley on the gin pole being fast-
ened about a foot and a half from the top. It stood upright
upon the stack plate, which had been painted a few days pre-
viously. The gin pole was not braced or otherwise fastened
at the base. At the time of the accident the plaintiff was
standing on the twelve or fourteen inch wide edge of the
roof engaged in pulling in and letting out the rope to raise
or lower the smokestack. Several men on the ground below
were also pulling on the line as directed. The stack had been
partially raised and again lowered, and was being again
raised when the base of the gin pole slipped upon the stack
plate, causing a sudden lessening of the tension of the rope
upon which plaintiff was pulling. This caused him to lose
his balance and to fall to the ground, sustaining the injuries
complained of.

Evidence was introduced to the effect that a fellow-work-
man had called Demorrow's attention to the fact that the base
of the gin pole was insecurely placed and that Demorrow
had resented the suggestion as an interference. Over ob-
jection evidence was admitted of the following cases of al-
leged incompetency of Demorrow: Three months prior to
the accident, Demorrow, while in charge of a crew of men,
had jumped upon a scaffold built for two men, but upon
which he allowed four men to work. This caused the scaf-
fold to break and throw the men to the ground, injuring
them. Demorrow had charge of the work of taking down a
heavy arch, one half of the arch being a burden for five or six
men. The arch was taken down in two sections. When the
half was being taken away the other half was left unsup-

ported and fell, injuring the men.   On another occasion De-
morrow, while in charge of the work of raising a large pump
into position, attempted to raise it with tackle which was
manifestly impractical, and the tackle broke.   Subsequently,
upon the suggestion of the superintendent, the task was ac-
complished by using jacks to raise the pump.   There was evi-
dence that he had previously had difficulty in placing a gin
pole; that he attempted to raise the weight which lay some
distance from the base of the gin pole.   The pole was placed
unbraced on a board and slipped several times.   There was
evidence that Demorrow had taken some heavy retorts from
a car in a slow and impractical way, and that while he was
engaged in removing a trip hammer from a car a general
foreman of the company came along and told Demorrow:
"You cannot do that.   Go and do something easier, and I
will do it myself."   Evidence was also received, over objec-
tion, tending to show Demorrow's temper and general dispo-
sition and attitude toward his men.   Demorrow did not have
power to hire and discharge the men under him.   Some of
the instances of alleged incompetency came to the knowledge
of the officers of the corporation and others occurred on oc-
casions within their observation.   It also appeared that va-
rious of these acts occurred some months before the accident.

Objection was made to the following parts of the judge's
charge:

"A competent man is a reliable man, says Justice MAR-
SHALL.   Incompetency in the law of negligence means want
of ability suitable to the task, either as regards natural quali-
ties or experience, or deficiency of disposition, or want of
disposition to use one's experience and abilities properly.
Incompetency may exist not alone in physical or mental at-
tributes, but in the disposition with which a person performs
his duties.   And though he may be physically and mentally
able to do all that is required of him, his disposition toward
his work, and toward his employer, and toward his fellow-
servants, may make him an incompetent man."

"If accidents occurred in certain of the construction gangs a sufficient length of time prior to this injury to the plaintiff so that in the exercise of ordinary care and diligence the defendant should have known of them, then we say it ought to have known of them, or would be held to have known them."

In commenting on the seventh question in the special verdict the court said:

"But in case you find that the plaintiff's injury was caused by the negligent act of Demorrow, an incompetent servant, and that such injury was the result of such incompetence of Demorrow, then, in case you find that that was the proximate cause of the injury, your answer to this question will be 'Yes.' "

The court submitted a special verdict, by which the jury found as follows: (1) That the plaintiff was injured on November 14, 1904, while in the employ of the defendant company, by the falling of a gin pole. (2) That the foreman, Edward Demorrow, did not exercise ordinary care in erecting the gin pole upon a freshly painted iron plate in the manner in which it was done, for the purpose for which it was used, just prior to the plaintiff's injury. (3) That Edward Demorrow was not a competent man to act as foreman on the rigging gang in the work in which it was engaged at the time the plaintiff was injured. (4) That the defendant company, prior to plaintiff's injury, had knowledge that Edward Demorrow was an incompetent foreman for such work as the rigger gang was engaged in at the time of plainti""'s injury. (5) That the defendant knew of such incompetency a sufficient length of time prior to plaintiff's injury so that in the exercise of ordinary care it ought to have removed him. (7) That such failure to exercise ordinary care, coupled with the incompetency on the part of Demorrow, was the proximate cause of plaintiff's injury. (9) And that plaintiff's compensatory damages would be $3,600.

Defendant proposed the following questions, which the court refused to submit:

"(1) If you answer the third question 'No,' then did the plaintiff know of such incompetency? (2) If you answer the third question 'No,' then answer this question; otherwise you need not answer it: 'Ought the plaintiff to have known of such incompetency?' (3) If you answer the second question 'No,' then was such failure to exercise ordinary care the proximate cause of the plaintiff's injury?"

The court also refused to give the following instructions as requested by the defendant:

"If you find from the preponderance of the evidence that Edward Demorrow knew how to set up the gin pole for the purpose for which it was to be used at the time of plaintiff's injury, then you will answer the third question in the affirmative."

"Knowledge by the defendant of one or two negligent acts of Edward Demorrow while engaged in work in the rigging gang is not knowledge that he was incompetent to do the work he was engaged in at the time of the accident."

This is an appeal from a judgment entered in favor of the plaintiff upon the special verdict.

For the appellant there was a brief by *Roemer & Aarons,* and oral argument by *C. L. Aarons.*

*John Toohey,* for the respondent.

SIEBECKER, J. An exception to the reception of evidence is urged upon the ground that the evidence admitted and relied on by the plaintiff to show Demorrow's incompetency as foreman of the rigging crew did not tend to support the specific charge of incompetency charged in the complaint. The complaint charges that defendant was negligent in furnishing an incompetent person to act as foreman of the rigging crew employed in conducting its business; that such foreman, on account of his want of proper skill and knowledge, caused a gin pole, used for hoisting a smokestack, to be placed on a

smooth steel plate on top of an arched building inclosing a boiler, without securely fastening such gin pole on the surface of the plate supporting it, thus leaving it in an unsafe and dangerous condition for the hoisting of the smokestack. It is not contested but that it was within such foreman's duty to have the gin pole properly and securely erected for the purpose of this undertaking and that the evidence justifies the conclusion that it was not securely placed on the occasion in question. Evidence was admitted tending to show that Demorrow, before this accident, had performed his duties as such foreman incompetently and unskilfully in respect to overloading a scaffold and causing it to collapse, in the unskilful management of the work of hoisting a pump, in improperly and dangerously unloading a heavy trip-hammer from a car, and respecting the general disposition with which he performed his duties and the general safety with which he conducted his work. Defendant's exception that evidence of such acts of incompetency does not tend to support the specific charge of incompetency is not well taken. These different acts of Demorrow were shown to be in the line of his duty as foreman of the rigging crew and tended to throw light on the question of his fitness and competency to perform them. The evidence was therefore properly submitted to the jury.

Nor is the objection that the evidence fails to show that knowledge of Demorrow's incompetency came to any one authorized to discharge him a good one. It appears that the chief engineer, Brown, and superintendent, Kraft, had observed how Demorrow performed his duties and had knowledge of his conduct and the way in which he performed his duties, which included the acts above specified, and that they had power to remove him and fill his place as foreman.

An exception to a portion of the instructions given by the court in connection with the third question is alleged as ground for reversal, on the ground that the instruction is

misleading and erroneous, in that it is a mere general statement of an abstract proposition of law, and omits to inform the jury what is incompetency in the law of negligence as applied to the facts adduced in evidence. We discover no such defect in the instruction and find it is applicable to this branch of the case and that it embodies a correct statement of the law.

Another instruction complained of bears on the sixth question of the special verdict, which covered the inquiry of whether defendant had constructive notice of Demorrow's incompetency, if the jury found as a fact that he was an incompetent person as charged in the complaint. The jury's finding that the defendant had actual knowledge of Demorrow's incompetency renders the inquiry concerning defendant's constructive notice an immaterial one, and no prejudice could have resulted from the alleged error in the court's instruction on this subject.

Defendant requested that the jury be directed that, if the evidence preponderated to the effect that Demorrow knew how to set the gin pole properly on this occasion, then the inquiry as to his competency must be answered in the affirmative. The court informed the jury that the plaintiff had the burden of establishing the fact of Demorrow's incompetency, and that it must be shown by a preponderance of the evidence, and he fully explained to them what is meant by the preponderance of the evidence in the trial of cases. This properly covered every element embraced in this request which was pertinent to the issue involved.

Defendant also asked that the jury be directed that in law knowledge of one or two negligent acts of Demorrow in the line of his duty as such foreman did not constitute knowledge of his incompetency. The object of this requested instruction was evidently to inform the jury that knowledge of one or two acts tending to show that Demorrow imperiled the safety of persons working under him did not establish that

defendant had knowledge of his incompetency.   The phrase-
ology includes only his negligent acts, and thus excludes acts
due to his incompetency respecting his duties, and hence, if
submitted to the jury as requested, would erroneously have
restricted the effect of the evidence tending to show he im-
periled the safety of those working under him to proof of his
negligence instead of his incompetency.   This renders the
requested instruction objectionable, and it was properly re-
fused by the court.

It is contended that the seventh question as framed and
submitted is too indefinite and uncertain to determine the
issue of proximate cause in the case.   The specific objection
is that the question so combines Demorrow's want of care on
the occasion in question and his incompetency to perform
his duty that it is impossible to ascertain which of these ele-
ments the jury found to be the proximate cause of plaintiff's
injury.   In submitting this to them the jury were informed
that they would not be justified in answering it in the af-
firmative by merely finding that Demorrow failed to exer-
cise ordinary care, nor by the mere finding that he was in-
competent, but that if they found that the plaintiff's injury
was caused by an act of Demorrow, "an incompetent serv-
ant," and that "such injury was the result of such incompe-
tence of Demorrow, then if you find that that was the proxi-
mate cause of the injury, your answer to this question will
be 'Yes.'"   This direction by the court removed any un-
certainty involved in the question.   An affirmative answer
to the question under this instruction could only follow
upon the finding by the jury that Demorrow's incompetency
was the proximate cause of plaintiff's injury.

The evidence referred to on which plaintiff relied to show
Demorrow's incompetency for a proper performance of his
duties and that defendant had knowledge thereof, together
with the other facts and circumstances bearing on these
questions in the case, was sufficient to warrant the jury in

finding that at the time of plaintiff's injury he was not competent to perform the duties of foreman of the rigging crew and that defendant had knowledge thereof.

Defendant requested that the jury be specifically required to find whether plaintiff actually knew, or under the circumstances proven in the exercise of ordinary care ought to have known, of Demorrow's incompetency. This request was refused, and the instruction on the question of plaintiff's contributory negligence did not specifically cover this phase of the case. The court's refusal to submit the requested question and the omission to give the appropriate instruction on this question is urged to have resulted in a failure to have the jury determine the issue of plaintiff's assumption of the risk incident to the negligence charged. It is claimed that plaintiff served under and with Demorrow a sufficient length of time to apprise plaintiff of his incompetency. Counsel point to no evidentiary facts tending to support such claim, aside from the fact that plaintiff worked in Demorrow's rigging crew for some time before the accident. Nor has our examination of the record disclosed any evidence tending to support this contention. There is no evidence showing plaintiff had knowledge of any of the specific acts in evidence tending to show such incompetency. So far as disclosed, it appears that plaintiff did not work regularly with Demorrow as a member of the rigging crew until two or three weeks immediately preceding the accident. His employment outside of the rigging crew did not bring him into sufficiently close contact with Demorrow's occupation to warrant the inference that he learned how he performed his duties. There is nothing in the situation thus presented to furnish a basis for a finding that plaintiff in the exercise of ordinary care ought to have known of Demorrow's incompetency.

We find no error in the record.

*By the Court.*—Judgment affirmed.