ELI C. BEERS *vs.* ISAAC PROUTY COMPANY.

Worcester.    September 29, 1908. — October 20, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Negligence*, Employer's liability.

At the trial of an action of tort for personal injuries alleged to have been received by the plaintiff while in the defendant's employ, by reason of the incompetence of a workman furnished by the defendant to work with him, there was evidence tending to show that it was the plaintiff's duty to act as the superior one of two workmen in the operation of a large and complicated machine, that occasionally the machine would have to be stopped because of becoming clogged, when both he and his fellow workman would have to clean it out, and that it frequently was necessary for him to give directions to the fellow workman; that, half an hour before the accident occurred, the alleged incompetent fellow workman was sent by the defendant to work with the plaintiff, that he could speak only French, while the plaintiff could speak only English, and that the plaintiff did not know that the fellow workman could not speak English; that the machine, becoming clogged, was stopped and the plaintiff and the fellow workman were at work cleaning it out, when the fellow workman started it up a little and the plaintiff's fingers became caught, that the plaintiff thereupon in English directed the fellow workman to turn off the power, but, instead, he turned it on, and the plaintiff lost his fingers; that, if the power had been turned off, the plaintiff could have extricated his fingers without injury. *Held*, that there was evidence warranting findings that, because he could not speak English, the fellow workman was incompetent for the work to which the defendant assigned him; that the defendant knew he could not speak English; that the plaintiff's injury resulted from such incompetence, and therefore that the defendant was liable.

TORT for personal injuries received by the plaintiff, while in the defendant's employ, by reason of his fingers being caught in a machine alleged to have been started negligently by an incompetent fellow servant.    Writ in the Superior Court for the county of Worcester dated March 27, 1907.

There was a trial before *King*, J.    The material facts are stated in the opinion.

At the close of the evidence, the plaintiff requested the following rulings: " (1) The fact that a fellow servant sent to work with another fellow servant upon a machine, in the natural and proper operation of which the labor of two men is required at the same time, and in the natural and proper operation of which it is necessary for the two men to talk with each other, cannot

speak or understand the language spoken by the other fellow servant, is some evidence of incompetency on the part of the fellow servant so sent. (2) If a fellow servant of the plaintiff is so inexperienced or so uninstructed that in working under the circumstances set forth in the first request he is not fit for the position, and he mismanages the machine in use by them so as to cause an injury to the plaintiff, this is some evidence of incompetency, and, other necessary elements being present, plaintiff may recover."

The presiding judge refused to make the rulings requested, but did rule, at the request of the defendant, " If the jury finds that St. Hillaire was competent to operate this machine, and knew the operations of the various levers, the plaintiff cannot recover "; and " the mere fact that St. Hillaire did not speak English, did not make him incompetent within the meaning of the law."

The jury found for the defendant; and the plaintiff alleged exceptions.

*M. M. Taylor*, for the plaintiff.

*C. C. Milton*, for the defendant.

RUGG, J. The plaintiff was at work, as an employee of the defendant, upon a somewhat complicated machine for the manufacture of paper or pasteboard boxes. In its ordinary and economical operation the labor of two men was required. A common occurrence was for the paper or pasteboard to clog in process of manufacture, rendering it necessary to stop the machine and clean off the paper and paste, which had stuck to it. The work of the plaintiff was " feeder," and he was the superior of the two men and in authority in running the machine. The other person working upon the machine was called " catcher." It was the ordinary course of employment for both men to work in cleaning when necessary. The plaintiff had been at work upon the machine for several weeks. About half an hour before the accident occurred, one St. Hillaire was for the first time sent by the boss of the defendant to work upon the machine as catcher. The plaintiff knew St. Hillaire only casually, and was not aware of the fact that he could not speak or understand the English language. After they had thus been at work together less than an hour, the machine, having become clogged with the

pasteboard and paste, was stopped by St. Hillaire, and both men began cleaning. Then St. Hillaire started the machine a bit, whereby the plaintiff's fingers were caught just hard enough so that they could not be pulled out, although "it was not exactly painful as they were held there." Thereafter the plaintiff in English, which was the only language he knew, directed St. Hillaire to put off the power.* Instead of following this direction, St. Hillaire started the power up, and the plaintiff's fingers were cut off. It might have been inferred that it was necessary, in the natural and proper operation of the machine, for the two men at work upon it to communicate with each other through the medium of speech. The question raised is whether, under these circumstances, the defendant might have been found to have furnished an incompetent fellow servant from the fact that it put a man at work on the machine who could not speak the English language, or the language of the man in charge of the machine. The charge of the trial judge must have left the clear impression upon the minds of the jury that mere inability to speak the English language on the part of St. Hillaire could not be found to be sufficient evidence of incompetency.

The duty of the employer is to exercise ordinary prudence in the selection of his servants, in order to ascertain that they are competent to perform the work to which they are to be assigned. If he employs an incompetent servant, having reason to know or opportunity to discover his want of capacity, then he is liable to any other employee, himself in the exercise of due care, who receives injury as a proximate result of some act of the incompetent servant growing out of his want of capacity. The employee has a right to rely upon the assumption that in this respect the master will perform his duty, and that the fellow servants employed to work with him will not be lacking in the possession of those usual attributes, which would make them ordinarily safe co-workers. He may with propriety act on the theory that

---

* The plaintiff testified, " If at the time my fingers were caught as I have stated, and before they were cut off, the power had been thrown off by this belt on the side of the machine you can back the machine up, that is, lower the block down, you could do this by pulling on that belt with your hands so as to reverse it, that would loosen it enough to let my fingers out."

he will in the performance of his own duties be free from the danger of want of capacity in his fellow laborers to perform their duties.

What constitutes incompetency of an employee varies with the nature of the duties he is called upon to perform, and their relation to other human beings. Where mere manual labor is required, and there is no occasion for the exercise of discretion and no expectation of co-operation with other laborers, it may be that servants of divers tongues may with propriety be put to work in the same company. Color blindness or extraordinary nearsightedness might render one incompetent to act as a locomotive engineer, while these same deficiencies might not impair the usefulness of a watchmaker. Deafness might make one useless as a telegraph operator or on a telephone exchange, but be no serious difficulty in a boiler maker. Ignorance respecting the duties one is called upon to perform would generally be incapacity. It is of no consequence whether that ignorance consists in a want of knowledge of mechanical processes or linguistic acquirements, provided the knowledge of the subject-matter is essential in the performance of the required duty. Ignorance of the English language in an experimental chemist working by himself for a steel manufacturer might not render him incompetent, but it could not be contended that one unfamiliar with that language would be a suitable teacher for the public schools.

The plaintiff was the superior artisan, and had been at work upon the machine which caused his injury for a considerable period of time. He had a right to assume that the defendant would not send an incompetent workman to assist him. From the photograph used in argument and the description given by witnesses, it is apparent that the box machine, upon which these two men were at work, was of considerable size, complicated in its design and intricate in its mechanism. In its ordinary use, frequent stopping, cleaning and starting were necessary, and co-operation between the workmen was required. There was evidence sufficient to justify a conclusion by the jury that it was necessary for the plaintiff to give directions by word of mouth from time to time to the catcher. Under these circumstances the jury should have been permitted to find

that the placing a man upon this machine, who was unable by reason of ignorance of the English language to understand and act upon directions received from the plaintiff, was in and of itself sufficient evidence of the employment of an incompetent servant. It was as if a man absolutely deaf had been sent. This want of knowledge resulting in an inability to obey orders was as much incompetency as nervousness or lack of judgment on the part of a stationary engineer, *Olsen* v. *Andrews*, 168 Mass. 261, or weakness, infirmity and excitability in an elevator man, *Ledwidge* v. *Hathaway*, 170 Mass. 348.

Nor can it be said that the plaintiff was not injured by this error. It is not open to argument that the defendant did not, or might not in the exercise of reasonable care, know of the inability of St. Hillaire to speak the English language, and that English was the vernacular of the plaintiff. The very act of hiring must have furnished this information. There was also ground for the view that the plaintiff's injury resulted directly from the inability of St. Hillaire to understand his orders. St. Hillaire was the one whose position for work at the machine made him naturally the one to put the power on and off. His posture was not such as to give him necessarily the knowledge that the plaintiff's fingers were caught, and he testified that he did not know they were caught, until he saw they were cut off. That he threw the power on instead of off may have been found to be the direct result of his inability to understand the direction given him in English by the plaintiff.

*Exceptions sustained.*