OSCEOLAR ROBBINS

*vs.*

LEWISTON, AUGUSTA AND WATERVILLE STREET RAILWAY.

Kennebec.    Opinion August 15, 1910.

*Master and Servant. Incompetent Servant. Retention of Incompetent Servant. Negligence. Evidence.*

In a legal sense, incompetency or unfitness of a servant is not predicated solely upon a want of ability and comprehension. It may be found side by side with even eminent skill, respecting the particular thing to be done, and yet that skill so often and persistently exercised in violation of rules, orders and regulations as to establish a character for such reckless acts as to render a person, who is in every way mentally competent, legally incompetent.

Past acts of negligence on the part of a servant in the performance of his duties have a direct and natural tendency to prove unfitness and incompetency, are prima facie admissible, and their admission is not in conflict with any rule or policy of law.

Specific acts of prior negligence of a servant are admissible to prove his incompetency where his employer has or ought to have knowledge thereof.

Whatever to the ordinary reasoning mind is logically probative of a fact in issue is prima facie admissible, and should not be excluded unless its admission violates a rule of law or policy.

Specific acts of prior negligence of a servant are admissible to prove the employer's knowledge of his incompetency.

A ruling admitting evidence is not reviewable where it does not appear that exception was taken thereto.

In an action against a street railroad to recover damages for personal injuries to the plaintiff, a motorman, caused by a collision of street cars, *Held:* 1. That the other motorman was incompetent and negligent, and that that incompetency was known to the defendant both when the plaintiff was injured and prior thereto, yet the incompetent motorman was retained in the defendant's employ. 2. That the defendant was liable in damages to the plaintiff.

On motion and exceptions by defendant.    Overruled.

Action on the case for personal injuries received by the plaintiff while in the performance of his duties as a servant of the defendant, claimed to have been caused by the negligence of the defendant in the choice and retention of one Merton L. Taylor and one Dana P. Sanborn, fellow-servants of the plaintiff, or one of them.    Plea, the general issue.    Verdict for plaintiff for $7500.    The defendant excepted to certain rulings and also filed a general motion for a new trial.

The case is stated in the opinion.

The plaintiff's writ contains three counts.    The first count setting out the cause of action generally, is as follows :

"In a plea of the case for that on the 20th day of July, A. D. 1907, the defendant company, to wit, the Lewiston, Augusta & Waterville Street Railway was a corporation duly organized by law and as such owned and operated a certain street railway or electric railway between the town of Winthrop and the city of Augusta, as a common carrier of passengers for hire, and as part of its business and in the usual course, thereof, owned and operated through its servants and agents, certain electric cars, so called, or cars the motive power of which was electricity.    And the plaintiff was then and there an agent or servant of said defendant company's.    And on the day, aforesaid, to wit, the 20th day of July, A. D. 1907, was duly and regularly employed as motorman aforesaid, and in the

regular course of his employment was driving a certain car belonging to said company from Winthrop aforesaid to Augusta, aforesaid. And the plaintiff says that the defendant company then and there owed him the duty of providing a reasonably safe and suitable place in which, and reasonably safe and suitable appliances with which to perform his labor, as aforesaid, and the plaintiff says the defendant company then and there owed him the duty of using reasonable care and diligence in the engaging, hiring or employing of reasonably careful and prudent servants or agents having a view to the nature of the work to be performed so that he would not in the ordinary and regular course of his employment be exposed to undue and unnecessary risk from the negligence or carelessness of negligent and careless fellow-servants. But the plaintiff says the said defendant company wholly unmindful of its duty in this regard and totally disregarding same, carelessly and negligently engaged or employed certain servants or agents, to wit, Merton L. Taylor and Dana Sanborn, as motorman and conductor, respectively on one of the defendant company's cars, and the plaintiff says these men were totally and absolutely unfit for the work to which they were assigned because of immaturity of age, want of experience and a careless, negligent and wilful tendency to disregard the rules of the defendant company's and the orders of their superiors in authority. All of which the defendant company then and there well knew, or in exercise of ordinary and reasonable care and diligence might have known and all of which the plaintiff was ignorant of and not at all informed of. And the plaintiff says that while in the due discharge of his duty and in the exercise of due care and in no way due to his fault, but entirely and solely due to the reckless, careless, wilful and wanton negligence of Merton L. Taylor and Dana Sanborn, aforesaid, the car in and upon which the plaintiff was at work as motorman, aforesaid, while coming toward Augusta and while in the town of Winthrop was suddenly crashed into by a car driven by said Merton L. Taylor and on which said Dana Sanborn was conductor and the plaintiff was then and there crushed, maimed and greatly injured about his head and chest, his spine and spinal cord and the structures thereto attendant, his stomach and bowels, his arms and

legs, receiving a great shock to his nervous system, injuring his brain, rendering him unconscious and otherwise greatly injuring him in mind and body, and as a result the plaintiff has suffered great pain and anguish both of mind and body, has been put to great expense for medical treatment, medicine and nursing, has been wholly unable to work or labor from the day of the accident to the date of this writ and is permanently injured and will be unable ever again to do work or labor."

*Benedict F. Maher,* for plaintiff.

*Heath & Andrews,* for defendant.

SITTING : EMERY, C. J., PEABODY, SPEAR, KING, BIRD, JJ.

SPEAR, J. This case comes up on motion and exceptions. The case is stated in the defendant's brief as follows :

On July 20, 1907, the plaintiff was a motorman on defendant's trolley car then running from Winthrop to Augusta, on a road which is operated by the block signal system. The track between the substation at East Winthrop and Island Park is governed by a block with lights at each end. Plaintiff, when about to leave the substation, found a white light in front of him, indicating, according to the system, that there was no car in the block coming toward him from Island Park. He was justified in going ahead into the block as he did. The due care of the plaintiff throughout is admitted.

Two cars had left Augusta running opposite to plaintiff, one the regular car bound for Winthrop, the other a special car with orders to run only to Island Park and to there cross plaintiff. The special had no right to go beyond Island Park. It was to follow the regular from Augusta to Island Park. The regular carried a sign "Car following" to indicate to all crossing cars that they should wait for the special. Plaintiff's car and the regular from Augusta should have crossed at Island Park, if both had been on time. On arriving at Island Park, plaintiff's car not being there, the regular properly proceeded on towards the substation, as the light at Island Park was white indicating that plaintiff had not arrived at the substation. When the regular so entered the block it threw the light at the sub-

station red indicating to plaintiff that he must wait for the regular before entering the block. The regular on crossing plaintiff at the substation took off the sign "Car following," as they knew the orders were for the special to remain at Island Park. When the regular passed plaintiff at the substation, he was justified in believing there was and would be no car in the block. The regular as it left the block turned the light white, a mechanical order to plaintiff to proceed to Island Park.

The special, without orders and against orders, left Island Park shortly after the regular and, unseen by the regular, continued to follow it to the substation. This had no effect upon the substation light which could be changed from red to white only by the action of the forward car, the regular. If the following car violates orders and enters a block behind a regular, the protection of the crossing car is in the "Car following" sign.

As a result the car of plaintiff and the special collided in the block, severely injuring plaintiff. That Taylor the motorman and Sanborn the conductor in charge of the special were both guilty of negligence in so entering the block was admitted. The damages were assessed at $7500. The defendant does not contend that the Law Court would be justified in finding the damages to be unreasonably excessive.

From this statement it will be seen that the plaintiff's action rests upon the claim that the defendant was negligent in the selection and retention of its servants, Taylor and Sanborn, especially Taylor, the motorman, when it knew, or by the exercise of due care should have known, his incompetency. The negligent act complained of was the running into the block without orders and against orders in violation of the rule.

The fate of the motion depends upon the result of the exceptions. If the exceptions prevail, the evidence in support of the verdict disappears. If the exceptions fail, the verdict is well founded. In other words, the evidence, if admissible, amply sustains both the charge of unfitness of the servant and such notice thereof to the defendant that it knew or by due care ought to have known of his incompetency.

But it is contended that the negligent acts of the servant, which by the verdict we must assume to be proven, were not of such a character as to fairly warrant the conclusion of incompetency. We think differently. Time after time he ran his car, in violation of rules and orders and against the protest even of the conductor, round curves at an excessive rate of speed. So persistently and recklessly did he do this that one conductor, after repeated reports of these wilful acts of misconduct to the superintendent of the defendant company, resigned his position rather than continue the hazard of further employment with this young man acting as motorman. He violated the controller handle rule which forbids a motorman to leave the car without taking his controller handle with him; he ordered the substation to shut down the power, clearly exceeding his authority; he refused to exchange passengers as ordered thereby disobeying the direct order of the superintendent; he refused to obey the conductor's signal bells.

These varied acts of insubordination seem to us more potent in their tendency to establish character for wilful disobedience, than the repetition for an equal number of times of the same act, involving the precise element of character. The conduct of this servant as manifested by these various acts fully brings him within the rule of legal incompetency. In the legal sense, incompetency or unfitness, is not predicated solely upon a want of ability and comprehension. It may be found side by side with even eminent skill, respecting the particular thing to be done, and yet that skill may be so often and persistently exercised in violation of rules, orders and regulations as to establish a character for such reckless acts as to render a person, in every way mentally competent, legally incompetent. Such is the tenor of the decisions.

In *Consol. Coal Co.* v. *Seniger*, 179 Ill. 370, 53 N. E. 733, the court say: "One is incompetent who is wanting in the requisite qualifications for the business intrusted to him. (He) was incompetent—if he was wanting in the qualifications required for the performance of the service, whether arising out of lack of knowledge or capacity, or other imprudence, indolence, or habitual carelessness."
In *Maitland* v. *Gilbert Paper Co.*, 97 Wis. 476, 72 N. W., at

1129 the court say : "A competent man is a reliable man. Incompetency exists not alone in physical or mental attributes but in the disposition with which a person performs his duties, and though he may be physically and mentally able to do all that is required of him, his disposition towards his work, and toward his employer and towards fellow servants, may make him an incompetent man." And it has been said in the recent case of *Hamann* v. *Bridge Co.*, 127 Wis. 550, 105 N. W. 1084 : "Incompetence in the law of negligence, means want of ability suitable to the task, either as regards natural qualities or experience, or deficiency of disposition to use one's abilities and experience properly."

See also *Young* v. *Milwaukee Gas Co.*, 133 Wis. 9, 113 N. W. 59; *Still* v. *San Francisco & N. W. Ry.*, 154 Cal. 559, 98 Pac. 672; *Beers* v. *Prouty & Co.*, 200 Mass. 19, 85 N. E. 864; *Baird* v. *New York Cent. & H. R. R. Co.*, 172 N. Y., 65 N. E. 1113.

Therefore, if the evidence of these specific acts of the servant was admissible to prove both incompetency and knowledge, then, the defendant being amply charged with knowledge, the jury were authorized to find the servant incompetent and to declare it negligent in longer retaining this young man in its employ as a motorman.

This brings us to the question raised by the exceptions : Is the evidence of specific acts of prior negligence admissible to prove (1) incompetency, (2) knowledge to the master. All the exceptions but one, which will be discussed later, present the same question of law and may be considered together.

The defendant does not question the assertion that the great weight of authority is in favor of the admission of such testimony, and cites only Massachusetts and Pennsylvania in opposition. On the other hand it appears from the plaintiff's brief that twenty-nine of the thirty-one States that have passed upon this question have decided in the affirmative. The precise question has never been raised in this State. We are, therefore, free to adopt that rule which seems best calculated upon the principles of reason and authority to attain the best results. Upon a careful examination of the authorities

it is the opinion of the court that the rule admitting specific acts of prior negligence, tending to prove the incompetency of a servant, when the master has actual knowledge of such acts or by the exercise of due care should have had such knowledge, is the safer and better rule to establish.

In arriving at this conclusion we have carefully reviewed and considered the reasons advanced by the courts for the directly opposite views by them declared.

The Massachusetts and Pennsylvania courts base their decision upon the doctrine of surprise and multiplicity of issues. See *Hatt* v. *Nay*, 144 Mass. 186; *Frazier* v. *Pennsylvania R. R.*, 38 Penn. 104. While many strong reasons may be adduced in favor of this doctrine, it has yet been found so impracticable in its application to concrete cases that even the later Massachusetts cases have felt compelled to modify it. See *Cox* v. *Central Vermont R. R.*, 170 Mass. 129; *Ledwidge* v. *Hathaway*, 170 Mass. 348; *Olsen* v. *Andrews*, 168 Mass. 261; *Peaslee* v. *Fitchburg*, 152 Mass. 155.

It should be observed, however, that the court stood squarely upon the original doctrine in *Coney* v. *Commonwealth Ave. St. Ry.*, 196 Mass. 111, and that the rule of exclusion is the law of Massachusetts today.

The opposite rule seems to be based upon the ground of natural admissibility. In Thayer's Preliminary Treatise Law of Evidence, page 530, is found the following:

"In like manner, in the whole of the secondary and adjective part of the law there should be little opportunity to go back upon the rulings of the trial judge; there should be an abuse, in order to justify a review of them by an appellate court. In order to make this practicable, the rules of evidence should be simplified; and should take on the general character of principles, to guide the sound judgment of the judge, rather than minute rules to bind it. The two leading principles should be brought into conspicuous relief. (1) that nothing is to be received which is not logically probative of some matter requiring to be proved; and (2) that everything which is thus probative should come in, unless a clear ground of policy or law excludes it."

From this it may be stated as a general principle that whatever, to the ordinary reasoning mind, is logically probative of a fact in issue, is prima facie admissible; and should not be excluded unless its admission is in conflict with some principle of law or in violation of some rule of policy. Past acts of negligence on the part of a servant in the performance of his duties have a direct and natural tendency to prove unfitness and incompetency, are prima facie admissible, and their admission is not in conflict with any rule or policy of law as the cases clearly show. In the *Pittsburg, Fort Wayne and Chicago Railway Company, Appellant,* v. *Ruby,* 38 Ind. 294, 10 Am. Rep. 111, it was held :

"In an action by a servant against the master, to recover damages for injuries occasioned by the negligence of a co-servant, held, that evidence of particular acts of carelessness and negligence on the part of the co-servant was admissible to show that the master had retained said co-servant in his service after he knew, or ought to have known, that said servant was careless and negligent."

A review of this opinion will disclose that the case was carefully considered and the opposite doctrine fully condemned. *Baulec* v. *New York and Harlem Railroad Co.,* 59 N. Y. 356, 17 Am. Rep. 325, involves the precise point in issue. After specifically rejecting the Massachusetts and Pennsylvania doctrine and fully approving the rule enunciated in the 38 Indiana, the court proceeds to give the following sound and cogent reasons for its opinion :

"Then as here the general fitness and capacity of a servant is involved the prior acts and conduct of such servant on specific occasions may be given in evidence with proof that the principal had knowledge of such acts. The cases in which evidence or other acts of misconduct or neglect of servants or employes, whose acts and omissions of duty have been held incompetent, have been those in which it has been sought to prove a culpable neglect of duty on a particular occasion, by showing similar acts of negligence on other occasions. . . . When character as distinguished from reputation is the subject of investigation, specific acts tend to exhibit and bring to light the peculiar qualities of the man, and indicate his adaptation or want of adaptation to any position, or fitness or unfit-

ness for a particular duty or trust. It is by many or by a series of acts that individuals acquire a general reputation and by which their characters are known and described, and the actual qualities, the true characteristics of individuals, those qualities and characteristics which would or should influence and control in the selection of agents for positions of trust and responsibility, are learned and known. A principal would be without excuse should he employ for a responsible position on the proper performance of the duties of which the lives of others might depend, one known to him as having the reputation of being an intemperate, imprudent, indolent or careless man. He would be held liable to the fellow-servants of the employe for any injury resulting from the deficiencies and defects imputed to the individual by public opinion and general report. Still more should he be chargeable if he had knowledge of specific acts showing that he possessed characteristics incompatible with the duties assigned to him and which might expose his fellow-servants and others to peril and harm."

The same rule is found in various states as shown by the following cases: *Staunton Coal Co.* v. *Bub*, 218 Ill. 125, 75 N. E. 770; *Evansville & T. H. R. Co.* v. *Guyton*, 115 Ind. 450, 17 N. E. 101; *Pfuld* v. *Romer Sons*, 107 Minn, 353, 120 N. W. at 303-304; *Hilts* v. *Chicago & G. T. Ry. Co.*, 55 Mich, 437, 21 N. W. 881; *Tucker* v. *Miss. & K. Tel. Co.*, 132 Mo. App. 418, 112 S. W. 8; *Galveston, H. & S. A. Ry. Co.* v. *Davis*, 4 Tex. Civ. app. 468, 23 S. W. 305; *First National Bank* v. *Chandler*, 144 Ala. 286, 39 So. 828; *L. & N. R. R. Co.* v. *Wyatt's Admr.*, 29 Ky. Law Rep. 437, 93 S. W. 604; *Stoll* v. *Daly Min. Co.*, 19 Utah 271, 57 P. 295; *Green* v. *Western Am. Co.*, 30 Wash. 87, 70 P. 320.

In *Smith* v. *Chicago P. & St. L. Ry. Co.*, 236 Ill. 369, will be found this significant language: "The mere happening of an accident would not ordinarily raise a presumption of incompetency. . . . but the conduct of a person on a single occasion may be entirely sufficient to demonstrate his unfitness, and, after such an occurrence, to charge the employer with a failure of duty in keeping him in the service."

We feel clear upon both reason and authority that the exception to the class of evidence above discussed should be overruled.

The exception to the admission of acts of prior negligence to prove the knowledge of the master has been coupled with the exception to the admission of such evidence to prove incompetency, inasmuch as, if the latter was determined to be competent evidence, the former, a fortiori, must be admissible. This conclusion is fully supported by the cases already cited upon the main proposition, and need not be further discussed. This exception should also be overruled.

The third and only other exception to be considered relates to the admission of the testimony of Maud Smith of a conversation which she heard related, at one time, by her husband to the superintendent of the road as to an accident, and injuries received by him while alighting from a car, upon which Merton Taylor was acting as motorman, and repeated at another time to one of the directors of the defendant company. This exception refers generally to the testimony of the witness to be found in the case enclosed in brackets. As no brackets appear to enclose any part of the evidence, we are able to consider only the pages referred to in the defendant's brief. But these pages do not disclose that any exceptions were taken. Therefore, we are unable to examine this exception further than to say that the evidence seems to be entirely competent upon the question of notice to the defendant.

It is conceded that the plaintiff, when injured, was in the discharge of his duties and in the exercise of due care. The evidence discloses that he was injured by the negligence of the defendant's servant; that the servant was in fact incompetent; and that his incompetency was known to the defendant, when the plaintiff was injured and prior thereto, and yet he was retained in its employ.

*Motion and exceptions overruled.*