Robert N. MacDONALD

v.

James F. HALL.

Supreme Judicial Court of Maine.

Aug. 5, 1968.

Carl R. Wright, Skowhegan, for plaintiff.

Robert W. O'Connor, Augusta, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN and WEATHERBEE, JJ.

MARDEN, Justice.

On appeal. This is a death action instituted by the representative of the Estate of Dale Allen MacDonald deceased, for the

benefit of the surviving wife and child. The death resulted from injuries received when the car which the deceased, as a Deputy Sheriff, was driving, left the road and overturned on November 26, 1965, while in pursuit of the defendant who was also driving a motor vehicle. At the time of the pursuit the defendant was aware that the Sheriff's Department of his County was seeking him, and believing that the purpose of the search was to "arrest" him on divorce papers. The deceased Officer MacDonald was, with others, making a search and pursuit to execute a felony warrant.

On two occasions on the date in question the defendant had fled from members of the Sheriff's Department and had told a witness that "he wasn't going to let them take him that evening." At about 8:30 p. m., the deceased and a companion officer as passenger in his car, observed and began pursuit of the defendant which pursuit continued without interruption a distance of from 2.7 to 3.2 miles. During this chase the defendant's car was under continual observation by the passenger, and at a T intersection on the road on which defendant and the officers were proceeding, which intersection was 7/10ths of a mile from the scene of the accident, defendant's car passed through a stop sign, left the main travelled portion of the highway, hit a sign post, regained the highway at increased speed, and at a second intersection, at which defendant turned left, with admitted awareness that the car behind him contained a sheriff, defendant applied his brakes so that his car "fish tailed" in front of the car operated by the deceased, at which the deceased applied his brakes, his car skidded off the road and rolled over, resulting in his death.

Following verdict for the defendant, plaintiff appealed and expressed his aggrievement in six points, five of which were based upon the admission or exclusion of evidence during trial, and the sixth to the presiding Justice's supplemental charge to the jury, having to do with the extent of the evidence which the jury could consider in determining defendant's "negligence which was the proximate cause of" the accident.

Appellant briefs two points for review which have to do with the reference instruction to the jury and the exclusion of plaintiff's Exhibit No. 8. The exhibit purports to be the record of the defendant's conviction for "operating a motor vehicle so as to endanger" on the 26th day of November, 1965, and founded upon the defendant's driving at the T intersection, above referred to. These points will be discussed in reverse order.

■ The exclusion of plaintiff's Exhibit No. 8, in the context of this record, was error.

"(A) conviction in a criminal case is not evidence in a civil action to establish the facts on which it is rendered."

unless the conviction is based upon a plea of guilty. "It is the admission by the plea * * * which is evidence." State v. Fitzgerald 140 Me. 314, 318, 37 A.2d 799, 800. See also Lipman Brothers, Inc. v. Hartford Accident & Indemnity Co., 149 Me. 199, 206, 100 A.2d 246. The exhibit was offered in a chamber conference and "excluded" before defense counsel had expressed the reason for his objection, which proved to be, not that the identity of the person named in the record had not been established, or that the conviction was not based upon a plea of guilty, but that the occurrence upon which the charge and conviction were based was too remote (distance-wise) from the scene of the accident. The holding herein relative to the events antecedent to the accident will obviate that issue upon re-trial.

The appeal from the jury instruction arises from the following facts. After the jury had deliberated about an hour, upon four questions in writing submitted by the Court and covering the issues in the case, following instructions to which no objec-

tions had been voiced, the jury presented to the Court the following written question:

"Should we consider evidence previous to the immediate time of the accident as Question No. 1."

(Question No. 1 was: "Was the defendant in the operation of his automobile at the time of the accident guilty of negligence which was the proximate cause of said accident?")

The presiding Justice answered as follows:

"I can simply answer this as bearing on the question of the conduct and the defendant as being causative of and causing the accident. I can only answer you this way, that—strike that.

"In determining the question: 'Was the defendant in the operation of his automobile at the time of the accident guilty of negligence which was the proximate cause of said accident?'

"You should consider the conduct of the defendant in the operation of his car as it relates to the happening of the accident at the very time of it or immediately preceding it, as bearing on the question of whether his operation was the proximate cause of said accident. That is as clear as I can put it. At the time or immediately preceding it. What may have happened the day before or a half hour before or two miles from there or a mile from there. The question is not the issue. A man may have had an accident at one point.

"The question for you is what was the conduct of the defendant in the operation of his motor vehicle, if he was the operator, which was the proximate cause of the accident when the other car of the plaintiff—the deceased went off the road.

"Was the operation of that motor vehicle—did it cause the accident. It was the operation of his car at the time of or im-

mediately preceding the accident which precipitated the accident. That's as far as I can go, having in mind all the instructions I have given you heretofore.

"That is the only way I can answer it, ladies and gentlemen."

To this instruction plaintiff objected, urging in substance, that the instruction too narrowly limited the facts which the jury was entitled to consider.

It is to be noted that Question No. 1 combined both a) negligence, and b) proximate causation. It could be understood as presupposing negligence, but we have no way of knowing which issue was giving the jury trouble. The Court's instruction was beamed at proximate causation. The problem may as well have been on the issue of negligence, by reason of meager instructions on that issue, discussed below.

About twenty minutes thereafter the jury returned a negative answer to Question No. 1, which was accepted as the verdict of the case.

We have, as reserved by the objection, the recurrent question of the extent to which evidence of a defendant's driving conduct prior to an accident is properly to be considered by the jury, measured by the principle of "remoteness," which is to be viewed not only within the two dimensions of time and distance, but a third dimension of probability that the conduct continued until the accident occurred. At some "remote" point the evidence becomes irrelevant.

"As a general rule:

"(I)t may be said that any legally competent evidence which, when taken alone or in connection with other evidence, tends to prove or disprove a material * * * issue or to defeat the rights asserted by one or the other of the parties, and sheds any light upon or touches the issues in such way as to enable the jury to draw a logical and reasonable infer-

ence with respect to the matter * * * in issue, is relevant." 29 Am.Jur.2d Evidence, § 252.

"In other words, whatever to the ordinary reasoning mind is logically probative of a fact in issue is prima facie admissible and should not be excluded unless its admission violates a rule of law or policy." 29 Am.Jur.2d Evidence § 251.

See also Robbins v. Lewiston, Augusta and Waterville Street Railway, 107 Me. 42, 50, 77 A. 537, 30 L.R.A.,N.S., 109. By its nature the question of remoteness depends to a great degree upon the facts of the case and its answer rests in the discretion of the trial court, Comins v. Scrivener, 214 F. 2d 810, [1, 2] 812, 46 A.L.R.2d 1 (10th CA 1954), generally Annot. 46 A.L.R.2d 9, and Emery v. Frateschi, 161 Me. 281, 287, 211 A.2d 578, which is to be criticized with great hesitation.

We have here a case which is *sui generis*. It is an accident arising out of an officer's legitimate pursuit of a fleeing suspect, who was aware that he was being sought and pursued, and who had declared an intention not to be "taken" that evening. The fact that the defendant erroneously associated an "arrest" with divorce process is not significant. His conduct was based upon an understanding, though grounded upon a faulty reason, that MacDonald was seeking to arrest him. Upon these undisputed facts, principles peculiar to a police-pursuit situation apply. As later declared, the knowledge of the defendant of attempts by officers representing the County Sheriff to apprehend him, is a vital circumstance in measuring his conduct against the required duty of due care. The events, in which at least three officers and the defendant were involved, before the incident resulting in MacDonald's death were relevant to the issue of defendant's knowledge. Very shortly before the final pursuit began the defendant had expressed an undisputed declaration that he would not permit himself to be apprehended that night.

■ The driving conduct of the defendant was under substantially constant observation by the surviving occupant of the deceased Deputy's car during the entire pursuit. The jury would have been justified in finding that his driving conduct while being followed by the deceased Officer evidenced an intention first to out distance his pursuer, to such extent that he overran one road intersection, and failing that, to adopt such tactics at the second intersection as to force the Officer to take evasive action. A jury might well interpret this state of mind and antecedent conduct as manifesting reckless disregard of the consequences, which is negligence of the highest degree. Requiring the jury, by instruction, to limit its consideration of the defendant's conduct bearing upon "negligence which was the proximate cause of" the accident, to his conduct "at the time of, or immediately preceding the accident" was prejudically narrow.

While the plaintiff comes to this Court on only two points of appeal, and under Rule 75 (d) M.R.C.P. points not designated "may be deemed waived," this Court has on infrequent occasions under the old Rule of Court XVIII, which similarly provided that failure to record exceptions "to any opinion, direction or omission of the presiding justice in his charge to the jury" would be regarded as waived, nevertheless reviewed the record on general motion for a new trial, when omissions from jury instructions "justified a belief that the jurors might have been misled as to the exact issue, or issues which were before them to be determined," and ordered a new trial. Roberts v. Neil, 138 Me. 105, 22 A.2d 135, and Thompson v. Franckus, 150 Me. 196, 204, 107 A.2d 485. This case merits such attention.

■ Inasmuch as the issues were submitted to the jury on special questions, and the jury's having given a negative answer as to whether the defendant "at the time of the accident" was guilty "of negligence which was the proximate cause of said accident," we discuss only the instructions

bearing upon those points. The jury was instructed with relation to the duty of the defendant that: "(N)o person shall stop or suddenly decrease the speed of such a vehicle without first giving an appropriate signal in the manner provided by this section * * * to the driver of any vehicle immediately to the rear when there is opportunity to give such signal." The appropriate signals provided by "this section" (29 M. R.S.A. §§ 1191–1193) were not defined for the jury, and no instruction was given bearing upon defendant's duty prior to turning at an intersection (§ 1191). There was a conflict of evidence on whether the defendant signaled an intended left turn, or whether only the defendant's brake lights gave warning of an intended turn, decrease in speed, or stop, to the deceased Officer. There being a conflict of evidence, the plaintiff was entitled to have the jury instructed as to the effect of non-compliance with the statute, if such non-compliance were found, the existence therein of prima facie evidence of negligence, and the resultant presumption of negligence. Nadeau v. Perkins, 135 Me. 215, 216, 193 A. 877; and Bennett v. Lufkin, 147 Me. 216, 218, 85 A.2d 922.

■ The basic speed rule, that it must be reasonable and proper in view of the circumstances (29 M.R.S.A. § 1252), was given, but its violation, if found, was not related to a resultant presumption of negligence. These omissions must be held as prejudicial within the rule of *Thompson, supra.*

■ There are other areas of concern. It is basic that due care requires the observance by one person of any duty imposed, by the common law or statute, for the safety of another. See 38 Am.Jur., Negligence § 2.

"(S)uch a duty exists at common law as a matter of relation (between the parties) and of knowledge of danger, which in turn, depends upon the probability of injury." 38 Am.Jur., Negligence § 14.

"(E)very person is held to a knowledge of the natural and probable consequences of his acts." 38 Am.Jur., Negligence § 24.

■ The "duty of taking care, * * * presupposes knowledge or its equivalent." The knowledge may be actual or that with which he is reasonably chargeable, by reason of events which could be foreseen or reasonably anticipated. 38 Am.Jur., Negligence § 23.

■ When the operator of a motor vehicle is aware that an officer is seeking to stop him, he has a common law duty to bring his vehicle to a stop, Parker v. Knox, 147 Me. 396, 401, 87 A.2d 663, without delay and in a reasonably safe place. This duty exists independently of the "emergency vehicle" provisions of 29 M.R.S.A. § 946. The operator must foresee or reasonably anticipate, upon his failure to seasonably stop that the officer may pursue him, and in such pursuit that speed limits may be exceeded, and that the pursuing car may be driven closer to the rear of his car than would ordinarily be sanctioned by rule of the road, and eventually overtake him and cause him to stop. He is bound to anticipate that such pursuit invites danger, not only to all users of the highway, but to the occupants of the respective vehicles. He has induced a race in which only the officer has a right, by virtue of his sworn duty, to participate. Here by uncontroverted evidence the defendant was aware that a deputy sheriff was pursuing him. He was negligent as a matter of law. See Weissengoff v. Davis, 260 F. 16 [2] 19 (4 C.C.A.1919) instruction (1); McKay v. Hargis, 351 Mich. 409, 88 N.W.2d 456 (1958); Goddard v. Williams, 251 N.C. 128, 110 S.E.2d 820, [4]824 (1959); Martin v. Rossignol, 174 A.2d 149 [7] 152 (Md.1961); Brechtel v. Lopez, 140 So.2d 189 (La.Ct. of Appeal 1962) re-hearing and cert. denied; and City of St. Petersburg v. Shannon, 156 So.2d 870 (Fla. Dist. Ct. of Appeal 1963).

His negligence being premised upon his course of conduct from the time he was aware, or reasonably should have been aware, that an officer of the law was seeking to arrest him, the companion issue of proximate causation is also to be determined by his entire course of conduct subsequent to the awareness with which he is charged,—not the conduct at "the very time of" or "immediately preceding" the accident.

Appeal sustained. New trial ordered.

DUFRESNE, J., did not sit.