STATE TO USE OF JOHNSON *et al. v.* W. W. CUNNINGHAM
*et al.*

[65 South. 115.]

1. SHERIFFS AND CONSTABLES. *Apprehension of fugitives. Misdemeanant. Negligent shooting. Action on bond. Arrest. Mode of making arrest. Care required. Killing fugitive misdemeanant. Plea. "At." "Towards." Mode of arrest. Discharge of firearms.*
   A sheriff and the sureties on his official bond are liable in a civil action for damages arising from the intentional or negligent shooting of a misdemeanant who flees to avoid arrest.

2. ARREST. *Mode of making arrest. Care required.*
   An officer arresting a fugitive misdemeanant owes to him the duty to exercise care and precaution not to injure him; nor must he discharge a firearm while in pursuit, in such a manner as to cause such fugitive injury.

3. SHERIFFS AND CONSTABLES. *Action on bond. Killing fugitive misdemeanant. Plea. "At." "Towards."*
   Where a declaration in an action against a sheriff and his bondsmen for the killing of a misdemeanant in attempting to effect his arrest, alleged that the sheriff failed to faithfully perform the duties of his office and disregarding such duties in his attempt to arrest "J" for the offense of disturbing public worship, did negligently and unjustifiably fire his pistol "at" and "towards" the said "J" as that the ball struck and killed him. In such case the gravamen of the cause of action was the sheriff's negligence in making the arrest, whereby deceased lost his life, the word "at" meaning "near, about, under, over, toward," and the word "toward" "in the direction of" and were therefore not effective to narrow the charge to an allegation that the sheriff pointed and aimed his pistol directly at deceased when it was fired.

4. SHERIFFS AND CONSTABLES. *Liability on bond. Mode of arrest. Discharge of firearms.*
   A sheriff pursuing a fleeing misdemeanant who willfully and intentionally fires a modern pistol of high power in the direction of such fugitive and the bullet strikes and kills him, is guilty of

a negligent, intentional and willful wrong for which he and his bondsmen are liable, whether he shot directly at the fugitive or the bullet struck a twig and glanced and struck deceased.

5. WEAPONS.  *Firearms.*
The highest degree of care is exacted of a person using firearms. They are extraordinarily dangerous, and in using them, extraordinary care should be exercised to prevent injury to others.

6. ARREST OF FUGITIVES.  *Discharge of firearms.*
The custom among officers to fire their pistols when pursuing fugitives, even when they are misdemeanants as a ruse to prevent their further flight, is a reckless use of firearms.

APPEAL from the circuit court of Prentiss county.
HON. J. H. MITCHELL, Judge.
Suit by the state for the use of John A. Johnston, and others against W. W. Cunningham and others. From a judgment for defendant, plaintiff appeals.
The facts are fully stated in the opinion of the court.

*Thos. H. Johnston, E. C. Sharpe* and *A. J. McIntyre,* for appellants.

Appellees' argument seems to be based upon the idea that the phrase in the declaration, viz.: "Fired his pistol at and towards the said Johnston," must be met by proof on our part, that the sheriff actually fired his pistol directly at and towards the boy who was killed; and that proof that the pistol was fired to one side, or above the boy, meets the issue presented by the pleadings, and entitles them to a verdict. Counsel's argument, reduced to the last analysis, simply means this, that if the sheriff had offered proof that he fired one inch to the right, or above the boy, or any other inappreciable distance, and could have convinced the jury of the truth of such statement, that this would entitle him to go free of all liability, because he had shown that he had not fired directly at and towards the boy. The two words "at and towards," taken in the narrowest sense, do not necessarily mean directly towards. The word "at" in its primary meaning

and significance, means "in or near;" and the word "towards" means "in the direction of." So giving the phrase its primary meaning, it could but mean, "in or near the direction of the boy;" but we contend that this phrase, taken in connection with the other matter alleged in the declaration, is broad enough to cover liability for the negligent, careless, willful and intentional killing of the boy by the firing of the pistol by the sheriff. The only case which we have been able to find where a similar phrase has been construed is that of *Lange* v. *State,* 95 Ind. 114, 115.

But we submit, that even if it were incumbent upon appellants, under the pleadings, to prove that the sheriff fired directly at and towards the boy, as they so strongly contend that it does, but which we in nowise admit, the peremptory charge should have been granted upon the second ground urged in our original brief. That is to say, there was ample evidence by appellants' disinterested witnesses, and the physical facts show, that the shot, whether intentionally or not, was fired directly at and towards Johnston, and there was no evidence to countervail this. The testimony of appellees' witnesses was utterly at war with the proven physical facts and the laws within the knowledge of common experience and did not produce even a scintilla of evidence.

Relative to the extreme care required by those who handle firearms and the liability for injuries inflicted by by their discharge, counsel seem to think that these cited in our original brief go to unwarranted extremes. In view of the lamentable frequency with which injuries and death occur from the negligent handling of firearms, we doubt if they go far enough. There is a line of cases in which injuries are inflicted by one to another of a hunting party. The courts in these cases hold the plaintiff to proof of negligence in the handling of the firearm, apparently holding that the party injured, to a certain extent, assumed the risk, or at least voluntarily exposed

himself to the risk of accidental injury by joining the hunting party.   12 Am. & Eng. Ency. of Law, 520.

In the case of *Dixon* v. *State,* —— Miss. ——, 61 So. 423, cited by counsel, the principal ground for reversal in that case, was that an instruction was given which was tantamount to a peremptory charge.   This being a criminal case, the court held such a charge to be reversible error, for a peremptory charge can never be given to find the defendant guilty.   Had this been a civil suit against Dixon for damages, would there have been any question as to the propriety of giving such a charge? He would have been liable beyond question.   To this point see the case of *Knott* v. *Wagner,* —— Tenn. ——, 16 Lea., 481, where it was held that the defendant fired his gun within two hundred yards of a public highway, which was forbidden by the statutes of the state, was liable for the injuries resulting from his wrongdoing.

The case of *Cleghorn* v. *Thompson,* 54 L. R. A. 402, also cited by counsel, seems to have been decided upon the principle that the result of the defendant's action, in firing at a marauding dog running up hill towards a highway, three hundred and fifty to four hundred yards away, the bullet striking some object and glancing and killing a man in the highway, which it is doubtful that defendant even saw, could not have been foreseen.   But the principle of law laid down in the case cited in our original brief is not criticised, or commented upon.   To the contrary the annotator cites in the note to said case, the case of *Sullivan* v. *Dunham* (N. Y.), 47 L. R. A. 715, where it was held that where a person was killed on a public highway by a missile thrown by the explosion of a blast, the person firing the blast was held guilty as a trespasser without regard to his negligence.   This seems to be the general rule where dangerous agencies are used.

*Jas. A. Cunningham,* for appellees.

Counsel for appellant, in their able brief, set up two lines of argument to convince this court of the merit of

their contention, under assignment of error I. First, they take the position that the very act of the sheriff in shooting (though the death of Johnston is shown to have been effected by an entirely different cause, and under entirely different circumstances of shooting to that alleged) was unlawful, and that by his unlawful conduct, appellees are precluded from showing circumstances exculpating themselves from the clutches of the law.

So at this late hour, appellants seek to avoid the very burden assumed by them in specifically averring, in their declaration, that appellee Cunningham, sheriff did on this occasion, "negligently, carelessly, recklessly, wilfully, intentionally, wrongfully, and unlawfully, fire his pistol at and toward the said Frank Johnston," etc. This appellees denied; the issue so made went to the jury, and they found against the contention of appellant.

The purpose of the court in refusing instructions numbers 6, 7, and 8, complained of by appellant under assignment II, could not have escaped again the understanding of the learned counsel for appellant; and the instructions complained of under assignment III, given appellees, announced in unmistakable terms the purpose of the court to confine appellants to the issue made in this declaration, which was the only open course in the absence of amendment, and in support of the court's action, we quote the following authorities, which we think amply support his views, to wit: Hughes on Procedure, 1905 Edition, "Variance," page 1254; *Bristow* v. *Wright*, L. C. 135; I Gr. Ev., 51, 63-65; 2 Id.; See *Res Adjudicata.*

Pleadings, among other things, limit issues and narrow proofs. Consequently they are to exclude departures and variances; and courts cannot therefore authorize the latter without practically abolishing pleadings, which is impossible in a constitutional government. See, also, Puterbaugh's Common Law Pleading and Practice, 1904 Edition, pp. 27, 28. Also, the following: 29 Cyc. 583-5; 31 Cyc. 672, 3, 674; *Richards* v. *City Lumber Co.*, 101

Miss. 691; *A. & V. R. R. Co.* v. *Groome,* 97 Miss. 209; 14 Am. & Eng. Pleading & Practice, pp. 342, 343.

The contention that, because this pistol was fired by the voluntary act of the sheriff and resulted in the death of Johnston, appellees are precluded from being heard on the defense set up in this record, is a most unreasonable demand—one that could not be maintained even under a declaration of general negligence against the sheriff for wilfully, etc., firing his pistol in the manner shown by this record.

The sheriff's sworn and official duty to make arrests under the circumstances such as confronted Cunningham on this occasion, is stripped by counsel for appellant of every semblance of its meaning. While no one would think it his duty, or even his right, to shoot wilfully or negligently at or toward Johnston, as alleged in this case, to effectuate this arrest, yet both public policy and the law demand that a sheriff exercise all reasonable means to arrest the participants of a drunken brawl and fight on an occasion of a religious meeting on the Sabbath Day. Not to be active and resourceful in effecting such arrest would expose a peace officer to the daring and ridicule of criminals and subject him to the contempt of law-abiding citizens.

A sheriff is only confined in the selection and exercises of the means of arrest to such reasonable means as ordinarily prudent men would likely adopt under similar circumstances. The officer, on this occasion, attempted the arrest by means of pursuit, by commanding decedent to stop, by threatening to shoot him if he did not stop, and by actually firing his pistol to get him to stop, at what would appear to any reasonable mind to be a safe range to preserve the safety of Johnston and all others. As to whether or not a sheriff or anyone else, in an effort to perform a duty, has selected reasonable means, and has exercised reasonable care in carrying the means into effect is, when controverted, a matter to be left to the

107 Miss. 10

sound discretion of a jury. Counsel seem to overlook the fact that the shooting was adopted by the sheriff as one of the means of achieving this arrest.

There is the strong and well-reasoned case of *Cleghorn* v. *Thompson* (Kan.), cited in 54 L. R. A. 402, in which a ball fired from a gun at a dog was deflected, and struck and killed Thompson, who was travelling upon the public highway in the vicinity of the directed shot. Appellant claimed, in that case, as in this, that the firing of the Winchester rifle at the dog, resulting in the death of this man, precluded the offender from showing that the kllling occurred by the misfortune or accident of an unforseen, intervening cause, which deflected the ball and gave it the fatal range. But the court held differently. Now what constitutes actionable negligence? A reasonable man can be guided only by a reasonable estimate of probabilities. If men went about to guard themselves against every risk to themselves or others which might, by ingenious conjecture, be conceived as possible, human affairs could not be carried on at all.

The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things. Pollock, "Torts", 36. But we cite the following case of *Dixon* v. *State,* 61 So. 423, which is another case of a deflected ball, in which the law on this question is so clearly and forcefully defined as to place it beyond cavil or doubt. This case is found not only on the highest character of reason, but is amply supported by the authorities cited by the court. We are perfectly contented to rely upon these two cases as the unmistakable announcement of the law on this subject.

Complaint of counsel under assignment of error IV to the court's ruling in permitting certain testimony introduced on the part of appellees, showing the custom

among officials of experience, to fire as a ruse to effect arrest, cannot in any way be prejudicial to the rights of appellant, if, for argument's sake, the same be conceded as error. This evidence was introduced to show the reasonableness of Cunningham's purpose in firing off his pistol, and to go in for what it was worth in showing the reasonableness of the stories of the witnesses for appellees, who swore the pistol was so fired.

We most earnestly insist that this record discloses a cause fairly submitted to a jury on the issue joined, and one in which a fair jury rendered its finding on the facts as presented on the issue, and that their finding should not be molested by this court.

REED, J., delivered the opinion of the court.

Appellants, the parents and brothers of Frank Johnston, brought suit against appellees, W. W. Cunningham, the sheriff of Prentiss county, and the sureties on his official bond, for the full penalty of the bond, claimed as damages for the wrongful death of Frank Johnston, who was shot and killed by the sheriff. Frank Johnston, when killed, was twenty years old. He was a hunchback, carrying his head tilted far back and a little to one side, and was five feet high. On Sunday, September 18, 1,910, at a church meeting in the country, called an "all day singing," several boys, including Frank Johnston, became engaged in a fight, or disturbance of the peace. The sheriff's attention was called to the matter and with two deputies he proceeded to arrest the boys. The scene of the disturbance was something over one-hundred yards from the church. When the sheriff and his deputies approached, Frank Johnston ran off through the woods and was followed by the officers and a number of other persons. After running a distance of one-hundred to one-hundred and fifty yards, the sheriff drew his pistol and fired. The boy dropped instantly, shot in the head, and died in a short time. While pursuing Frank

Johnston, the sheriff called to him, "Stop, or I'll shoot you!" and the youth replied, "Shoot, damn you!" One witness testified that the sheriff fired just as Johnston made his reply. Another witness said that he heard the sheriff speak to Johnston and then shot as he turned his head to reply. The sheriff testified that he went some steps before firing. He says that he told Johnston several times to stop or he would shoot, and that the boy made reply. There was a clear or open space in the woods from where the sheriff stood when he shot to where the young man fell. The distance between them is estimated by the witnesses to have been about fifteen or seventeen yards. The bullet entered the left side of the head, a little behind and above the left ear, and ranged forward and downward and to the right. The downward range of the bullet was estimated by one physician to be about thirty degrees, and by another, about forty-five degrees. The wound was a round bullet hole. Measurements by an engineer of the elevations of the places where the sheriff stood when he fired and where Johnston fell, as located by the witnesses for plaintiffs, show the same to be practically on a level. The sheriff states that the young man was on higher ground than he was and he estimates the difference to be about six feet. There is a conflict in the testimony as to whether the sheriff or the boy was on a higher elevation. The pistol used by the sheriff was a 41 Colts, loaded with a long cartridge and a round nose lead bullet. Frank Johnston had been guilty of committing a misdemeanor, only when his arrest was sought. Appellants' testimony shows that the sheriff, while still following the boy and comparatively near to him, pulled out his pistol, presented it, fired, and the boy fell immediately, shot in the head. The sheriff testified that he fired at an angle of forty-five degrees and at the same angle up. Several of his witnesses support his statement, that he did not aim directly at the youth, but to the right and up.

It is contended by appellants that the trial court erred in refusing them a peremptory instruction.

There can be no question that a sheriff and the sureties on his official bond are liable in a civil action for damages arising from the intentional or negligent shooting of a misdemeanant who flees to avoid arrest. The officer owes to the fugitive the duty to exercise care and precaution not to injure him. He must not intentionally shoot a misdemeanant who is a fugitive, nor must he discharge a firearm while in pursuit, in such a manner as to cause such fugitive injury.

It is claimed by appellees that the issue of the liability in this case is narrowed by the pleadings. They, in support of this claim, refer to the following allegation in the declaration: "Then and there negligently, carelessly, willfully, intentionally, wrongfully, and unjustifiably, fired his pistol at and toward the said Frank Johnston, and the ball from the pistol so fired by the said W. W. Cunningham struck and instantly killed him, the said Frank Johnston." Their argument is, in effect, that the proof must show that the sheriff pointed and aimed his pistol directly at the deceased when he fired; and that they would be relieved of liability in the case, as made by the pleadings, if it is established that he fired to the side, even though the ball thus fired struck and caused the death. We consider this view of the case quite too narrow. This suit is to recover for the death of Frank Johnston resulting from the firing of a pistol by the sheriff. In order to get the gist of the cause of action, we make a more extended quotation from the declaration: "Plaintiff further avers that the said W. W. Cunningham, while sheriff as aforesaid, did not faithfully perform and discharge all the duties of the said office of sheriff and all acts and things required by law, or incident to the said office, as required by law, or incident to the said office, as required by law and the obligations of his said official bond; but, to the contrary, not

regarding his duty as such sheriff as aforesaid and plaintiff's rights, for the use aforesaid, did on or about the 18th day of September, 1910, at Piney Grove Church in said county and state and while acting as said sheriff, and in the course of his duty as such, attempted to arrest the said Frank Johnston, on information that he, the said Frank Johnston, was then and there disturbing public worship, that in attempting to arrest the said Frank Johnston he went towards him and commanded him to halt, when the said Frank Johnston turned and ran away in attempting to avoid arrest, when the said W. W. Cunningham, in attempting to make the arrest as aforesaid, then and there negligently, carelessly, recklessly, willfully, intentionally, wrongfully, and unjustifiably fired his pistol at and towards the said Frank Johnston, and the ball from the pistol so fired by the said W. W. Cunningham struck and instantly killed him, the said Frank Johnston.''

It will be seen that it is charged that the sheriff failed to faithfully perform the duties of his office, and that, disregarding such duties, did in his attempt to arrest Johnston for the offense of disturbing public worship, negligently, etc., fire his pistol, the ball from which struck and killed Johnston. The gravamen of the statement of the cause of action is the officer's negligence in making arrest whereby deceased lost his life.

We cannot see that the words ''at and towards'' have the effect of narrowing the charge in the declaration of liability, as contended. These words have a some what indefinite meaning. In the Century Dictionary ''at'' is described as ''a preposition of extremely various use.'' It is therein said that according to its context it is equivalent to ''near, about, under, over, toward.'' The same dictionary defines ''toward'' as meaning ''in the direction of.'' Anderson's Law Dictionary says the word ''at'' ''is somewhat indefinite.'' A statute of Indiana made the pointing of a firearm ''at or toward any other

person'' an offense.   In the case of *Lange* v. *State*, 95
Ind. 114, it was held that the pointing of a gun at the
door of a dwelling wherein the person threatened was a
sufficient proof that the gun was pointed ''at or toward.''
The court said, ''The word 'toward' is of very compre-
hensive signification, for it means, 'in the direction of.' ''
The general significance of these words is controlled by
the context.   This is so in the case at bar.   The charge
against the sheriff is his failure in his official duties, con-
sisting of his improper use and discharge of a firearm.
It is admitted that he fired his pistol and that the ball
therefrom struck and killed Johnston.   The ball went
out of the muzzle of the weapon and went into the head
of the unfortunate youth.   The ball was going in the di-
rection of its victim when it struck.   The sheriff, when
asked by his own counsel on direct examination, ''Did
you shoot at him?'' answered, ''Yes.''   He evidently
understood ''at'' to mean in the general direction of.

The proof in this case clearly establishes that the
sheriff fired his pistol willfully and intentionally, and
his act in so doing amounted to negligence.   The expla-
nation of counsel for appellee that the ball fired up and
to the right struck a twig glancingly which diverted it
to the left, where it struck another twig and then, glanc-
ing downward, went into Johnston's head, is not in keep-
ing with the reasonable and ordinary view of the matter.
We must bear in mind that the sheriff was shooting with
a modern pistol of high power, the ball from which would
have easily gone through any twig of average size; and
we should also keep in mind that the wound did not show
that the ball was in any manner affected by having
struck an object glancingly.   On the other hand, a round
bullet hole is shown.

However, it is our view of the case that appellees
should be held liable because of the negligent, careless,
reckless, willful, intentional, wrongful, and unjustifiable
discharge by the sheriff of his pistol while he was in pur-

suit of the deceased, who had only committed a misdemeanor.

The highest degree of care is exacted of a person handling firearms. They are extraordinarily dangerous, and in using them extraordinary care should be exercised to prevent injury to others. We quote from Cooley on Torts (3d Ed), p. 1232, as follows: "A high degree of care is necessary in the use or manipulation of loaded weapons in the presence or vicinity of other persons, and where injury results from a failure to exercise such care the defendant is liable." We take the following rule from Barrows on Negligence, p. 367: "The bearer of loaded firearms is bound to exercise the utmost diligence in their handling and he is liable for any injury caused by their discharge, unless it appear that he was entirely without fault." We do not find that the sheriff was exercising the degree of care required by law. He has failed to show that he was without fault. He was running after the deceased, a youth charged only with disturbing the peace, through the woods and over uneven ground; his drawing and firing his pistol, under the circumstances as shown by the proof in this case, was indeed reckless and careless.

The evidence discloses that there is a custom among officers to fire their pistols when pursuing fugitives, even where they are misdemeanants, as a ruse to prevent their further flight. We unqualifiedly condemn this practice of the reckless use of firearms. Officers should make all reasonable efforts to apprehend criminals; but this duty does not justify the use of firearms, except in the cases authorized by law. Officers, as well as other persons, should have a true appreciation of the value of a human life.

The peremptory instruction to find for the plaintiffs should have been given by the trial court.

*Reversed and remanded.*