### WEISSENGOFF v. DAVIS.*

(Circuit Court of Appeals, Fourth Circuit. July 1, 1919.)

No. 1700.

1. DEATH ⊕⇒35—ACTION FOR WRONGFUL DEATH IN ONE STATE MAINTAINABLE IN ANOTHER STATE IF ITS PUBLIC POLICY PERMITS.

Under the decisions of the Supreme Court, which, being upon a question of general law, are binding upon all federal courts, where the statute of a state permits recovery for wrongful death an action for a death occurring in that state may be maintained in any state whose statute or public policy is not inconsistent with the statute sought to be enforced.

2. DEATH ⊕⇒14(1)—ACTION FOR WRONGFUL DEATH LIES AGAINST ONE UNLAWFULLY RESISTING ARREST.

Where a sheriff stepped upon the running board of a moving automobile driven by defendant, and placed him under arrest for a misdemeanor, it was the duty of defendant, knowing the sheriff held a warrant, to stop the car; and where he kept it running, in an attempt to escape into another state, and engaged in a struggle for its control, until it struck a bridge support and the sheriff was killed, his action was an active and unlawful resistance of authority, which rendered him liable for the sheriff's death.

In Error to the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Action by George R. Davis, administrator of the estate of Donald P. Davis, deceased, against Peter Weissengoff. Judgment for plaintiff, and defendant brings error. Affirmed.

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 250 U. S. 674, 40 Sup. Ct. 54, 64 L. Ed. ——.

William L. Marbury, of Baltimore, Md. (M. M. Neely, of Fairmont, W. Va., on the brief), for plaintiff in error.

Albert A. Doub, of Cumberland, Md., and Harry G. Fisher, of Keyser, W. Va. (George A. Finch, of Baltimore, Md., on the brief), for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. On June 27, 1917, Donald P. Davis, sheriff of Mineral county, W. Va., in the execution of a warrant he held for the arrest of the defendant, Peter Weissengoff, stepped upon the running board of defendant's automobile as he was driving through the town of Piedmont, W. Va. The car was not stopped, but continued in somewhat rapid motion until it struck an abutment of the Potomac bridge between Piedmont, W. Va., and Westernport, Md., and killed Davis. In this action for damages for his death, brought by the administrator in the district of Maryland, the question on the merits was whether the accident was due either to the defendant's unlawful resistance of arrest or attempt to escape after arrest, carried into effect by refusal to stop the car and relinquish its actual control to the sheriff, or by running it at a reckless or dangerous rate of speed; or to wanton and unlawful conduct of Davis in seizing the wheel and struggling with the defendant for the control of the car, and in the struggle moving the accelerator and increasing the speed, and pulling on the wheel so as to drive it against the bridge.

[1] A demurrer to the jurisdiction was overruled, and the jury found a verdict of $10,000 for the plaintiff. In support of the demurrer to the jurisdiction defendant relies on Ash v. B. & O. R. R. Co., 72 Md. 144, 19 Atl. 643, 20 Am. St. Rep. 461, holding that the statute of West Virginia conferring a right of action for wrongful death is not enforceable in the court of Maryland, the Maryland statute on the subject being similar, but not identical. That case was decided in 1876, and it does not seem that the court of Maryland has been called on since to review the question. But it is now settled beyond debate by the Supreme Court of the United States that, when the statute of one state takes away the common-law obstacle to a recovery for an admitted tort, an action for the tort committed in that state may be maintained in any state where the statute of the state in which the cause of action arose is not in substance inconsistent with the statute or public policy of the state in which the right is sought to be enforced. The question is one of general law, and the decisions of the Supreme Court are binding in this court. Dennick v. R. R. Co., 103 U. S. 11, 26 L. Ed. 439; Texas & Pac. Ry. Co. v. Cox, 145 U. S. 593, 12 Sup. Ct. 905, 36 L. Ed. 829; Northern Pacific R. R. Co. v. Babcock, 154 U. S. 190, 14 Sup. Ct. 978, 38 L. Ed. 958; Stewart v. B. & O. R. R. Co., 168 U. S. 445, 18 Sup. Ct. 105, 42 L. Ed. 537; Farrugia v. Pa. R. Co., 233 U. S. 353, 34 Sup. Ct. 591, 58 L. Ed. 996.

[2] The defendant knew the sheriff had a warrant for his arrest for the misdemeanor of selling liquor in West Virginia. There was testimony on behalf of plaintiff that Davis stood in front of the moving car in which the defendant had four of his children and waved to

defendant to stop, telling him he had a warrant for him and that he was under arrest; that defendant refused to stop, and increased the speed of the car, saying to Davis he would see him some other time; that Davis jumped on the running board of the car, and again said, "Pete, you are under arrest." The defendant denied that Davis signaled him to stop or said anything until he jumped on the running board; but he knew Davis had a warrant for him, and the evidence leaves no doubt that defendant knew that Davis by his action meant to arrest him. The defendant gave this account:

"Front of the bank building and I passed down this way, and he just jumped on my car, and this way some way (indicating), and grabbed that wheel, and I guess pushed that throttle on and the machine started to zigzag. I hold and children scared, one fall down on my feet, and another grab me (indicating) and hollering, 'Papa, Papa.' Machine come close to sidewalk, and I hold on as I could so get in road and find myself on bridge, and that is all I know. This throttle stand here (indicating). Stick out, like you jump and grab with left hand wheel, and then grab that right hand wheel (indicating), and shove my hands down on bar. I had my hands on bar, and he had his hands on top, and started gas, and the machine started to run fast."

Other testimony on behalf of defendant was to the effect that he and Davis were struggling for control of the wheel and talking loudly to each other, about 275 yards from the bridge, and that the struggle and loud talking continued until the car struck the bridge—Davis pulling one way and defendant the other. One of the witnesses testified that Davis gave a pull on the wheel toward the girder post before the car struck.

The distance from the bank building where Davis got on the machine to the bridge is 820 feet. The car was driven at a speed of 20 to 25 miles an hour from the bank to the bridge, and turned in its course two curves, one very sharp. This turn, it seems, would have been impossible if Davis had been then seriously interfering with the course of the car. Two other facts are evident from the testimony beyond reasonable controversy: Defendant alone had access to the brakes, and could have stopped the car at once; defendant continued to run the car in defiance of the sheriff's authority to escape arrest by getting into Maryland.

The case turns on the soundness and applicability to the evidence of the following request of defendant refused by the District Judge:

"The jury are further instructed that the offense with which the defendant stood indicted at the time when it is alleged that the sheriff, Donald P. Davis, attempted to arrest him, is a misdemeanor, and that in making an arrest for the committing of a misdemeanor the sheriff, or other officer of the law, is not justified in taking human life, or in employing any method or means in making such arrest as will expose the person to be arrested or those accompanying him to serious risk or deadly injury, unless the party whom such officer is attempting to arrest resists such arrest in some manner more serious than by attempting to run away from such officer, and even if the jury believe from all the evidence that the defendant attempted to avoid arrest at the hand of the sheriff by simply fleeing from said sheriff, and that said sheriff attempted to make such arrest of the defendant in such a reckless manner as not only greatly to endanger the life of the defendant and his four children, who were in the defendant's automobile, but in such a reckless manner that the automobile in which the defendant was then and there rid-

ing was wrecked as a result of such recklessness on the part of the said sheriff, thereby causing the death of said sheriff, then the plaintiff is not entitled to recover in this case, and the verdict of the jury should be for the defendant."

The law of the case was given to the jury in these two propositions—the first at request of plaintiff, and the second at request of defendant:

(1) "The jury are instructed that, under the uncontradicted evidence in this case, Donald P. Davis, deceased, on the 27th day of June, 1917, was sheriff of Mineral county, West Virginia, and had in his possession a warrant for the arrest of the defendant, and on said date saw the defendant driving on Child's avenue, in the town of Piedmont, West Virginia, in his motor car, and the said defendant then and there knew that the said Donald P. Davis had a warrant for his arrest; and if the jury believes from the evidence that the defendant understood that the said Donald P. Davis then and there wanted to arrest him, and that the said defendant while driving said car on Child's avenue saw the said Donald P. Davis approach his car as he believed for the purpose of arresting him, but that the said defendant then and there made an effort to escape from arrest by speeding up his automobile, and further find that the said Donald P. Davis thereupon stepped on the running board of the said automobile in order effectually to place said defendant under arrest, and further find that the said defendant then and there had his car under control, and could have stopped his car, but, on the other hand, increased the speed of the said automobile for the purpose of escaping from arrest, and further find that in his effort to escape arrest the car of the said defendant was driven at a dangerous, reckless, and unlawful speed by the defendant, and so negligently and recklessly that the said car was run against one of the iron supports of the bridge leading from Piedmont, West Virginia, to Westernport, Maryland, and that as a result thereof the said Donald P. Davis was so seriously injured that from the effects thereof he died soon thereafter, then the verdict of the jury shall be for the plaintiff."

(2) "The jury are instructed that unless they shall find by a fair preponderance of the evidence that the defendant, in a willful attempt to escape arrest, intentionally increased the speed of his automobile with a view of escaping from the state of West Virginia, or, with such intent, failed to use means (if such were accessible to him) which a reasonably prudent and law-abiding person would under the circumstances have used to stop the car, then the plaintiff cannot recover and your verdict should be for the defendant."

We think this was a fair statement of the law applicable to the facts, and that the request refused was not applicable. A sheriff may not kill or imperil life in the effort to arrest a person charged with a misdemeanor or to prevent his escape after arrest. 2 R. C. L. 471; Thomas v. Kinkead, 55 Ark. 502, 18 S. W. 854, 15 L. R. A. 558, 29 Am. St. Rep. 68; Brown v. Weaver, 76 Miss. 7, 23 South. 388, 42 L. R. A. 423, 71 Am. St. Rep. 512; State v. Cunningham, 107 Miss. 140, 65 South. 115, 51 L. R. A. (N. S.) 1179.

In this case there can be no doubt that the act of the sheriff in stepping on the car by the side of defendant with his warrant indicated to defendant the purpose to take him into custody as distinctly as if the sheriff had walked up to him on the street and touched him on the shoulder with the announcement of arrest, and was a complete arrest. 2 R. C. L. 445; Rhodes v. Walsh, 55 Minn. 542, 57 N. W. 212, 23 L. R. A. 632. The arrest not only conferred legal control and custody of the body of the defendant, but as a necessary incident the legal custody and control of the automobile in which he was riding. The fallacy in the request refused was in assuming that defendant had

legal control of the car, and asking the submission to the jury of the question whether the defendant was resisting the arrest in some manner no more serious than by simply attempting to run away and attempting to avoid arrest by simply fleeing from the sheriff. The conduct of defendant was much more than a mere attempt to escape. It was aggressive resistance. After the sheriff stepped on the car and made the arrest the struggle for control of the machine between him and the defendant was an unlawful struggle, initiated, not by the officer, but by the defendant, to wrest the machine from lawful control, asserted and taken by the officer. By initiating and persisting in the effort to wrest the control of the car from the sheriff, the defendant took the risk of his unlawful and aggressive action. It was the duty of the sheriff to overcome this active resistance by force proportionate to it. Hawkins v. Commonwealth, 61 Am. Dec. 161 (note); State v. Evans, 84 Am. St. Rep. 696 (note); State v. Krakus, 5 Boyce (Del.) 326, 93 Atl. 554; Leger v. Warren, 51 L. R. A. 215 (note); 2 R. C. L. 470. The principle stated has been applied in analogous cases.

After demanding the opening of the doors of a man's dwelling house it is the duty of an officer with a warrant charging a misdemeanor to break the doors, and if the accused resists, and in the struggle injures or kills the officer, he is a wrongdoer. 5 C. J. 426; Farmer v. Sellers, 89 S. C. 492, 72 S. E. 224.

An officer has the right to stop a train or stagecoach to effect an arrest. St. Johnsbury & L. C. R. R. Co. v. Hunt, 60 Vt. 588, 15 Atl. 186, 1 L. R. A. 189, 6 Am. St. Rep. 138; Brunswick & W. R. R. Co. v. Ponder, 117 Ga. 63, 43 S. E. 430, 60 L. R. A. 713, 97 Am. St. Rep. 152. Inevitably it follows that if in the exercise of the duty to stop the train and make the arrest the officer steps on the engine, and the engineer initiates a struggle with the officer to wrest the temporary control of the engine from him, he is liable for the consequences of the struggle. It would hardly be disputed that if defendant after arrest had pointed a gun at the sheriff as a means of effecting his escape, and in the struggle for the possession of the gun it had been accidentally discharged and killed the sheriff, the defendant would be civilly liable. It is true that, if in such a struggle initiated by the defendant the officer does a wanton or malicious act resulting in injury to the defendant, he, and not the defendant, would be responsible. 2 R. C. L. 470; 5 C. J. 424. But in this case even if the sheriff, in the excitement of the struggle initiated by the defendant, did so move the wheel that the car struck the bridge, it would be beyond all reason to say that the jury could find he maliciously or wantonly ran a car going 20 to 25 miles an hour against the bridge, when he knew that the impact would almost certainly result in his own death or serious injury. The overwhelming presumption is against such an inference. Viewing the testimony most favorably to the defendant, the only reasonable inference is that the defendant, after his arrest and after the sheriff had assumed legal control of the car, undertook to wrest it from the sheriff's legal custody, and in consequence of the struggle thus begun by the defendant the car was unintentionally driven against the bridge.

Davis was an officer of the state of West Virginia executing its warrant for the arrest of the defendant. His duty to enforce that warrant and the duty of the defendant not to resist within that state fall within the principle thus forcefully laid down by Justice Bradley in Ex parte Siebold, 100 U. S. 371, 25 L. Ed. 717:

"Why do we have marshals at all, if they cannot physically lay their hands on persons and things in the performance of their proper duties? What functions can they perform, if they cannot use force? In executing the processes of the courts, must they call on the nearest constable for protection? Must they rely on him to use the requisite compulsion, and to keep the peace, whilst they are soliciting and entreating the parties and bystanders to allow the law to take its course?  *  *  *

"The argument is based on a strained and impracticable view of the nature and powers of the national government. It must execute its powers, or it is no government. It must execute them on the land as well as on the sea, on things as well as on persons. And, to do this, it must necessarily have power to command obedience, preserve order, and keep the peace; and no person or power in this land has the right to resist or question its authority, so long as it keeps within the bounds of its jurisdiction."

Under these circumstances the first request of the defendant granted by the court was as favorable as the defendant had the right to ask, especially when it is considered with the conditions of recovery set out in plaintiff's first request.

The defendant had been tried in the state court under a criminal charge of responsibility for the death of Davis. By stipulation "that either the plaintiff or the defendant may read from a copy of the record in said criminal case as testimony, to the jury, the evidence of any of the witnesses who testified in said criminal case, from the record in said criminal case, without the personal attendance of any of the said witnesses, and said testimony when read to the jury is to have the same effect as if the said witnesses were present in court and so testified, so far as the same may be admissible in evidence." Under this stipulation the defendant offered, as tending to prove that defendant was not attempting to escape, the statement of Mr. Whitworth, one of defendant's counsel in the state court, which had been offered in the criminal trial there, but rejected as incompetent. This statement was to the effect that under Mr. Whitworth's advice defendant was ready to give bond for his appearance, and thus avoid formal arrest by the sheriff under the warrant held by him. As this was not the evidence of any witness who testified in the criminal case, it is not covered by the stipulation. But, waiving that, its exclusion was harmless, in view of the conclusive evidence that defendant was trying to escape.

Affirmed.