KELLY *v.* STATE.

(Division B.   Feb. 17, 1930.)

[126 So. 194.   No. 28246.]

**A. G. Busby,** of Waynesboro, for appellant.

**Forrest B. Jackson**, Assistant Attorney-General, for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

The appellant, Mack Kelly, was indicted, tried, and convicted of the murder of one Bud Bazor, and was sentenced to the penitentiary for his natural life, and appeals from said conviction here.

The appellant, Kelly, was an overseer of the county road convicts. Bud Bazor had been convicted of a misdemeanor and sentenced to imprisonment; first he had been sentenced to the county farm, but complained that he could not do the work there, because of an injury to his ankle which prevented him from doing plowing necessary to be done upon the farm. On his complaint he was carried to the county road crew and placed under charge of the overseer there. The appellant began his duties as convict overseer on Friday and the killing occurred on the Saturday afternoon following. On Saturday morning Kelly carried something to the county site and directed Bazor to unload the stuff from the truck, or to assist in doing so. Bazor refused and stated that he was going over to a barber shop and get shaved; he walked away, followed by Kelly, who endeavored to persuade Bazor to return to his duties. When he reached the railroad crossing at the county site, Kelly returned to the sheriff's office and stated to the sheriff what had happened, and asked instructions as what to do under the circumstances. The sheriff told him, in effect, "He is your prisoner and you will have to attend to that." Thereupon Kelly went to the barber shop where Bazor had gone; he found Bazor sitting in a chair awaiting his turn to be shaved. Kelly ordered Bazor to get up and go with him, and Bazor requested Kelly to wait awhile,

that he was next, and would go with him when he got his shave. Kelly replied: "No, get up and go now." The evidence is a little conflicting as to what Bazor said. According to some of the state witnesses, he stated to Kelly, "Sit down and be peaceable, I will go with you when I get shaved;" and, according to other witnesses, he used vile language towards Kelly and said: "You are fixing to make me kick you out of here." Kelly made the third request, or demand, for Bazor to get up and return with him, and fired the shot which was fatal, Bazor dying almost immediately. According to some of the witnesses, Kelly stated, after the shot was fired, "You did not believe I would shoot you, did you?"

Kelly's statements were to the effect that just before the shot was fired Bazor reached his hand up under his coat, and he thought he was either going to draw a weapon or grab his (Kelly's) gun. The appellant was asked the following questions, and replied thereto as follows:

"Q. When you got to the barber shop and went in what did you say? A. I said to him, 'Come on, Bud, lets go over there and unload out stuff off the truck,' and he said, 'Have a seat and don't be in such a damn big hurry.' He said 'I'm the next man in the chair and I will go with you then,' and I said, 'Come on, let's go,' and he kind of moved around, and he was setting in this position, and he moved his hand under his coat, and he started to get up, and he said, 'You God damn little son of a bitch, you aim to carry me to jail, do you.' "

"Q. He stuck his hand where? A. Under his coat."

Further on in the examination appellant was asked the following questions and made answers:

"Q. And he was sitting up there and he had no more in his hands than I have got in mine right now, had he? A. I could not see nothing.

"Q. You saw nothing in his hands? A. No, sir."

There was an effort on the part of the appellant to prove certain statements made by Bazor to others that

he was going to grab the pistol of one of the guards and draw it on the other one and disarm him and march them to the state line separating Mississippi and Alabama, and go on away; the place where they were working not being far from the Mississippi-Alabama line. Counsel for appellant also attempted to prove by one of the guards that Bazor had asked the guard, before Kelly arrived, to chain him to a tree; that he wanted Kelly to think he was the worst man living, or words to that effect. The court refused to admit these statements, and that is assigned, amoung other things, for error.

We do not think the court committed any error in excluding these alleged threats. There was nothing to show that Bazor, the deceased, was making any effort to disarm Kelly at the time of the shooting, and the situation was such that he could not have readily done so, Kelly being several feet from him and there being ample opportunity to thwart any developments along that line; also, there were a number of people in the barber shop, which make it unreasonable to suppose that Bazor would attempt to do so, and the nearest testimony tending to show that attempt is the bare statement of Kelly's that he thought he might do so, without any overt act leading one to believe that he would do so. It is not probable that the appellant believed that the deceased was armed; he was a convict under the charge of Kelly, and there is nothing to show that he was armed, or in a situation that would reasonably lead Kelly to believe that he was armed. According to Kelly's own statement he did not see any weapon in Bazor's hand.

The appellant was not authorized to shoot the deceased or to use firearms upon him to make him return to his work. This, we think, is clearly settled in the case of Brown v. Weaver, 76 Miss. 7, 23 So. 388, 42 L. R. A. 423, 71 Am. St. Rep. 512, and State v. Cunningham, 107 Miss. 140, 65 So. 116, 51 L. R. A. (N. S.) 1179.

We have examined the instructions and all of the assignments of error complained of and find no merit in the complaints made. Whatever may have been Kelly's idea of his authority to use a weapon to compel Bazor to return to his work, such belief did not protect him from the consequences of his act unauthorized by law. The state procured an instruction upon manslaughter, defining for the jury the law upon that subject as applied to the case. The jury heard all the evidence, and it was sufficient to sustain a verdict of guilty, convicting Kelly of murder. The judgment must therefore be affirmed.

Affirmed.