**TABOR v. McKENZIE, Sheriff, et al.**

No. 1182.

Court of Civil Appeals of Texas. Waco.
April 21, 1932.

A. M. Blackmon, of Groesbeck, and A. B. Geppert, of Teague, for appellant.

Carl Cannon, L. W. Shepperd, and C. S. & J. E. Bradley, all of Groesbeck, for appellees.

GALLAGHER, C. J.

This suit was instituted by appellant, Walter Tabor, against appellee A. B. McKenzie, sheriff of Limestone county, and the American Surety Company of New York, a corporation, surety on his official bond, to recover damages for personal injuries suffered by him as the result of a shot fired by appellee McKenzie, or certain of his deputies, in attempting to effect his arrest.

The case was submitted on special issues. The issues submitted by the court and the answers of the jury thereto were as follows:

"No. 1: Was the plaintiff, Walter Tabor, shot by either A. B. McKenzie, sheriff of Limestone county, Will Adams, deputy sheriff of Limestone county, or Wiley Sims, deputy sheriff of Limestone county, while such officers were in the act of effecting his arrest? Answer: Yes.

"No. 2: What amount of money, if paid in cash at this time, will adequately compensate the plaintiff, Walter Tabor, for the damages, if any, by him sustained by reason of the injuries, if any, inflicted on the occasion in question by either A. B. McKenzie, acting as sheriff, or by either Will Adams or Wiley Sims, at the time acting in their official capacity as deputy sheriffs, respectively? Answer: None."

The court, at the request of appellant, submitted his special issue No. 1, which issue and the answer of the jury thereto were as follows: "No. 1: Did A. B. McKenzie, Will Adams, Wiley Sims, or either of them, in attempting to arrest plaintiff, shoot plaintiff and inflict the injuries complained of, while he, plaintiff, was fleeing, or running from said officers to evade arrest? Answer: No."

The court, at the request of appellees, submitted their special issues Nos. 3 and 4, which issues and the answers of the jury thereto were as follows:

"No. 3: Was the act of A. B. McKenzie, Wiley Sims and Will Adams, or either of them, in shooting at the time and in the manner they did shoot, under all of the existing circumstances, negligence, which negligence, if any, was the proximate cause of the injury to plaintiff? Answer: No.

"No. 4: Was the act of one of the shots fired by A. B. McKenzie, Will Adams or Wiley

Sims, striking plaintiff and injuring him, if one of them did strike him, an accident or unforeseen result of such shooting and not a natural and probable result of such shooting and reasonably to have been expected under all of the circumstances? Answer: Yes."

The court entered judgment on the verdict for appellees.

## Opinion.

Appellee McKenzie contends that the testimony in this case shows as a matter of law that appellant's cause of action, if any, was barred by the statute of limitation of two years, and that the judgment of the trial court should be affirmed on that ground, regardless of errors, if any, in the trial of the case. While this issue was not presented to the trial court for determination, in view of the fact that the judgment will be reversed, we deem it proper to pass upon the same. Appellant was shot November 2, 1928. This suit was filed October 27, 1930. Citation was immediately issued, returnable to a term of court beginning November 3, 1930, but was permitted to remain in the office of the clerk without any attempt to place the same in the hands of an officer for service until November 8th, which date was after the return day of such citation and more than two years after said shooting. An alias citation, returnable to a subsequent term of court, was then issued and promptly served. Appellee's specific contention is that the testimony failed to show any reasonable excuse for appellant's failure to place the original citation in the hands of an officer for service. Appellant introduced testimony of circumstances tending to explain and extenuate the delay. The issue, therefore, became one of fact, and appellee, not having invoked a finding thereon, waived the same. Gulf, C. & S. F. Ry. Co. v. Flatt (Tex. Civ. App.) 36 S. W. 1029, 1031; Panhandle & S. F. Ry. Co. v. Hubbard (Tex. Civ. App.) 190 S. W. 793, 794, par. 3, and authorities there cited; Forrest v. Orange Printing Co. (Tex. Civ. App.) 43 S.W.(2d) 132, 133. Appellant, however, sued on appellee McKenzie's official bond, which was signed both by him and his surety. While the trespass upon appellant's person was an essential element of his cause of action, the liability sought to be enforced against appellees arose from their contract, evidenced by such bond, and his action was really founded thereon. Lasater v. Waits, 95 Tex. 553, 555, 68 S. W. 500; Fox v. Cone, 118 Tex. 212, 215, 216, 13 S.W.(2d) 65, 66, 67. Appellant's cause of action being founded on a contract in writing, the two years statute of limitation constituted no bar thereto.

Appellee American Surety Company of New York assails appellant's right to maintain an action on said official bond for redress for his injuries. Said bond was dated December 15, 1926, and covered a two-year term of office, beginning January 1, 1927, during which term appellant sustained the injuries complained of herein. It was made payable to the Governor and his successors in office and conditioned as required by law. Such conditions were, in substance, that appellee McKenzie would account for and pay over, to persons authorized by law to receive the same, all moneys collected, that he would execute and return all lawful process, and faithfully perform all the duties required of him by law. Said surety contends in this connection that an action can be maintained on an official bond by one not named therein only when the right to do so is conferred by statute, either in express terms or by necessary intendment, and that no such statute existed at the time appellant's cause of action arose, nor at the time of trial herein. The identical issue presented by such contention was considered by the Circuit Court of Appeals of the United States for the Fifth Circuit, in an appeal from the District Court for the Northern District of Texas, in Bracken v. Cato, 54 F.(2d) 457, 458. In that case the injured parties sued in their own names on a sheriff's bond for the death of a prisoner at the hands of one of his deputies. The injuries resulting in the death of the prisoner were inflicted in October, 1928, and the legal status of the plaintiffs' cause of action in that case was the same as appellant's in this case. The trial court instructed a verdict in favor of the sheriff and his surety. The complainants prosecuted an appeal to the Circuit Court of Appeals, which reversed the judgment of the trial court and remanded the cause. We quote from the opinion of the court in that case as follows: "Prior to the revision of the statutes of Texas in 1925, it was provided that a sheriff's bond 'shall not be void on the first recovery, but may be sued on from time to time in the name of any person injured until the whole amount thereof is recovered.' Revised Civil Statutes of 1911, art. 7121. In the revision of 1925, that article was retained as article 6866, but there was omitted from it the language just above quoted. However, a separate provision was inserted as article 6003, which reads: 'No official bond shall be void upon first recovery but may be sued upon in separate actions until exhausted.' There was thus omitted in the revision of 1925 nothing of substance except the words 'in the name of any person injured'; but those words were restored in 1931. Acts 42nd Leg. (1931), c. 260, § 1, Vernon's Ann. Civ. St. art. 6866. It is true, therefore, that at the time this suit was brought there was no express statutory authority for bringing it in the name of the plaintiffs. But we are of opinion that none was necessary. It is provided by statute that, 'whenever an official bond is made payable to the State of Texas, or any officer thereof, and a recovery thereon is authorized

by, or would inure to the benefit of parties other than the State, suit may be brought on such bond in the name of the State alone for the benefit of all parties entitled to recover thereon.' Article 1991. This statute was clearly intended to be permissive and not mandatory. It was held to be so by the Court of Civil Appeals of Texas in Eastland County v. Hazel, 288 S. W. 518, where it is said that suit on an official bond can be brought in the name of the real parties in interest. The decisions of the Supreme Court of Texas there cited sustain, in principle at least, the conclusion arrived at, which seems to us to be a sound one. At any rate, the matter being merely procedural, the right to proceed in their own names has now been restored to the plaintiffs by the Legislature." See, also, in this connection, Eastland County v. Hazel, cited in the above excerpt, and the authorities referred to therein. Our own Supreme Court refused a writ of error in that case. See, further, Howard v. United States, 184 U. S. 676, 22 S. Ct. 543, 548, 46 L. Ed. 754, par. 3; Lynch v. Burgess, 40 Wyo. 30, 273 P. 691, 62 A. L. R. 849. We do not think that the committee of eminent lawyers who prepared the revision of the statutes under consideration should be presumed to have intended to make such a radical change in our statutory law as to exempt sheriffs and constables from liability on their respective official bonds for damages to individual citizens for trespasses on their persons or property. Neither do we think such intent must necessarily be attributed to the Legislature in enacting such statutes. We think that a right in any person suffering such injury to seek redress therefor by action on such official bonds is given or recognized by necessary intendment in the several articles hereinbefore referred to bearing on such issue in the Revised Statutes as they existed at the time appellant sustained his injuries. The contention of the surety is therefore overruled.

■ Appellant presents various assignments of error in which he complains of the action of the court in submitting, over his several objections, appellees' special issue No. 3, hereinbefore quoted. Appellant objected to the submission of said issue on the ground, in substance, that his suit was based on the sheriff's official bond for damages for a breach thereof, and that no issue of negligence was involved. The rule governing the liability of sheriffs and the sureties on their official bonds is stated in 24 R. C. L. p. 966, par. 60, as follows: "A sheriff and the sureties on his official bond are liable in a civil action for damages arising from the intentional or negligent shooting of a misdemeanant who flees to avoid arrest, although the officer merely fires his pistol in his direction to cause him to halt. The law which gives an officer the right to kill an escaping felon requires him to know that he is the felon, not

an innocent person whose life he is attempting to take. Hence if a sheriff's deputies attempt to arrest an innocent person, erroneously supposing him to be a felon whom they have been sent to apprehend, and kill him as he tries to escape, the sheriff and his sureties are liable therefor." We deem it proper in this connection to call attention to the fact that in this state an officer has no right to use greater force in arresting one suspected of having committed a felony than one suspected of having committed a misdemeanor. Vernon's Ann. Penal Code, art. 1212, and cases cited in notes thereto; Vernon's Ann. Code of Criminal Procedure, art. 241, and authorities cited in notes thereto. The operation of a still and the manufacture of intoxicating liquors is a felony in this state. Penal Code, arts. 666 and 689. Appellee discovered appellant in company with three others in close proximity to a still in operation. He approached for the purpose of arresting said parties, and appellant and another ran. Appellee and his deputies fired in the direction of appellant as he ran, as hereinafter more fully stated. There was no testimony that appellant was interested in the still, nor that he had in any way participated in operating same. See further, on the issue of liability, King v. Brown, 100 Tex. 109, 94 S. W. 328; Moore v. Lindsay, 31 Tex. Civ. App. 13, 71 S. W. 298; Black v. Moore, 35 Tex. Civ. App. 613, 80 S. W. 867; State v. Cunningham, 107 Miss. 140, 65 So. 115, 51 L. R. A. (N. S.) 1179, 1182, 1183. Under the authorities above cited, the liability of a sheriff and the sureties on his official bond for shooting one who merely runs to escape arrest arises when such shooting is either intentional or negligent. Both appellant's pleadings and the testimony in this case raised an issue of negligence on the part of the sheriff and his sureties in firing at or toward appellant as he ran to avoid arrest. Appellant urged various other objections to the form of appellees' special issue No. 3 by which the issues of negligence and proximate cause were submitted. Said issue as submitted was subject to criticism, but appellant's objections thereto can be easily obviated upon another trial.

■ Appellant contends that the testimony introduced in this case was wholly insufficient to raise an issue of pure or unavoidable accident, and that the court therefore erred in submitting appellees' special issue No. 4 hereinbefore quoted. The testimony presents several sharp conflicts. Appellee testified that he shot in the direction of appellant, but over his head; that he did not bring his gun to position, but fired with the butt toward his hip; that his deputies, Adams and Sims, both shot, one with a pistol and the other with a rifle; that his purpose was to frighten appellant so he would stop. Appellee's deputy Sims testified that he did not shoot at anybody intending to hit him; that he fired two or

three times, but did not take accurate aim nor try to shoot anybody; that appellee's deputy Adams was shooting, but he did not know whether Adams shot at anybody or in the air; that all three were shooting at random; that he may have shot appellant, and that appellee, from the way he was shooting, may have shot him. Adams did not testify. There was also testimony that appellee McKenzie knelt on one knee, raised his rifle to his shoulder, and shot on a level with appellant; that when appellant fell appellee approached him and asked appellant if he had shot him; that appellant asked why he wanted to shoot him and that appellee replied, "I can't bring a rope and rope you." The testimony was uncontradicted that appellee was shooting what is commonly called a soft-nosed bullet; that appellant was shot from the rear in the upper part of the thigh; that the entrance hole was small; that the thigh bone was shattered by the bullet, and that the hole where the same passed out of the leg was much larger than the hole at the point of entrance, the former being about the size of a man's hand. There was testimony that appellant was about seventy-five yards from the officers at the time he was shot; that the space between him and the officers at that time was open. There was also testimony that trees, undergrowth, and shrubs were located in that neighborhood. Appellee testified that the shot which struck appellant must have first struck a tree or limb and have been deflected thereby to appellant's leg. Search failed to reveal any mark indicating that the bullet first struck a tree or shrub and was deflected therefrom to appellant's leg. It is impractical to recite all the testimony bearing on this issue, but the foregoing is intended to indicate the general nature of the same. "Accident" is a word of various shades of meaning. The kind of accident under consideration is generally denoted by a modifying adjective such as "pure," "unavoidable," or "inevitable." An inevitable accident is defined in 1 Shear. & R. Neg. (6th Ed.) §§ 16, 18, as follows: "An accident is inevitable if the person by whom it occurs neither has nor is legally bound to have sufficient power to avoid it or prevent its injuring another. * * * But in order to prove that an accident was inevitable, it is not always enough to show that under the circumstances existing at the time, it could not have been then avoided. It must also be the fact that the defendant was not guilty of any negligence which brought about any of those circumstances."

The Commission of Appeals, in Dallas Railway & Terminal Company v. Darden, 38 S.W. (2d) 777, 779, par. 1, defined such accident in the following terms: "An unavoidable accident is one which is not occasioned in any degree, either directly or remotely, by the want of such care or prudence as the law holds every man bound to exercise. If the accident complained of could have been prevented by either party, by the use of means suggested by common prudence, it was not unavoidable. Galveston, H. & S. A. Ry. Co. v. Gormley (Tex. Civ. App.) 35 S. W. 488; Hodgson v. Dexter [1 Cranch, C. C. 109], 12 F. Cas. [page] 283, No. 6565; Smith v. Southern Ry. Co., 129 N. C. 374, 40 S. E. 86; Wilson v. Roach, 101 Okl. 30, 222 P. 1000; Dygert v. Bradley, 8 Wend. (N. Y.) 469."

The proper application of the term is explained in 20 R. C. L. p. 20, as follows: "If the injury resulting from the act could have been foreseen by a prudent person, the perpetrator will be held accountable therefor; the case is not one of accident. And conversely, if the injury could not have been foreseen, it is to be attributed, not to the actor, but to accident. Accident, then, is an occurrence that could not have been foreseen."

It is of course impossible to announce a fixed rule, applicable to all cases, by which it can be decided just when such issue is presented. The facts of each particular case must be examined with a view of ascertaining whether a theory is presented under which the accident could have happened, notwithstanding the exercise of the degree of care required by law. Considering the circumstances of this case as a whole, we do not think it can be consistently said that, if the shot which struck appellant proceeded directly from the gun of appellee or his deputy to the point where it struck his leg, such striking did not result, even remotely, from the want of exercise of such care or prudence as the law required under such circumstances. It is well known that even a good marksman shooting at such distance sometimes misses the object he shoots at, and, conversely, sometimes hits an object he did not intend to hit. Appellee's theory that the bullet which struck appellant's leg had first struck a tree or shrub and been deflected therefrom is not only uncorroborated by any physical evidence of such striking, but is in effect negatived by the undisputed testimony concerning the character of the bullet and the appearance of the wound made in appellant's leg thereby. The possibility of such striking and deflection ought to have been as apparent to appellee and his deputies before they fired as afterward. If so, we do not think it can be said that the possibility of injury to appellant could not have been foreseen, nor that his injuries did not result even remotely from a lack of care on their part. We therefore conclude that the issue of pure or unavoidable accident was not raised by the testimony introduced at the trial of this cause. Dallas Ry. & Terminal Co. v. Darden, supra, page 779 of 38 S.W.(2d) pars. 2, 3 and 4, and authorities there cited; State v. Cunningham, 107 Miss. 140, 65 So. 115, 117, 118, 51 L. R. A. (N. S.) 1179, 1183; Geiger v. Madden, 58 Pa. Super. Ct. 616 (see Note, 18 A. L. R. 197); Hogan v.

Kansas City Public Service Co., 322 Mo. 1103, 19 S.W.(2d) 707, 712, 65 A. L. R. 129, pars. 10 to 14, inclusive.

Appellant presents a group of assignments of error in which he complains of language used by one of appellees' attorneys in the cross-examination of one of his witnesses, and of language used by appellees' attorneys in their arguments to the jury. One of appellant's bills of exceptions shows that he was a barber, and that, while the extent of the disability suffered by him as a result of the injury to his leg was under investigation, appellees' counsel asked appellant's witness on cross-examination to what extent such disability would affect him as a barber and as a maker of whisky. Appellant objected to the injection of his ability to make whisky into such examination, and the court instructed the jury not to consider such reference. Another of appellant's bills of exceptions shows that one of appellees' attorneys, in addressing the jury, said: "Gentlemen of the jury, this is just the case of another moonshiner coming into court trying to get something out of Boss McKenzie, and you are not going to permit this kind of a man to wring money out of your sheriff and mine while he is trying to do his duty." Appellant objected to such language on pertinent grounds, but no action by the court on such objection is shown. Another of appellant's bills of exceptions shows that one of appellees' attorneys, in addressing the jury, said: "Gentlemen of the jury, you cannot expect your sheriff to break up bootlegging in this country and bring in the bootleggers if he has to put salt on their tails in order to catch them, or to rope them in order to bring them in. He has a right under the law to shoot them if they undertake to get away, and you know it. It is the only way in which a bootlegger can be apprehended. If the bootlegger runs and succeeds in getting away, there is not one chance in a hundred of his ever being apprehended, and you ought to support your sheriff in his efforts to enforce the law by recognizing the right which the law gives him to shoot a moonshiner who is about to escape. This is a contest between law and order on the one side and a bunch of moonshiners and lawbreakers on the other, and as for me, I have enlisted on the side of law enforcement, and I call upon you now to take your stand and support your sheriff and my sheriff in his attempt to enforce the prohibition laws in this county." Appellant objected to said argument on pertinent grounds, which included the fact that there was no testimony in the record that appellant ever made or sold a drop of liquor, and that the law with reference to the right of appellee to shoot a person to prevent his evading arrest was misstated. No action by the court on such objection is shown. Both said bills of exceptions show that such argument was not in reply to or justified by any argument of appellant's counsel. There was no testimony before the jury that appellant had ever engaged in the sale or manufacture of whisky. While the testimony showed that at the time appellee and his deputies approached to arrest him he was standing with three others at or near a still in operation, and immediately began to run, there was no attempt to show that he was interested therein, or that he in any way participated in the operation thereof. Under the circumstances shown, the act of appellees' attorney in embodying in his question an inquiry as to appellant's ability after his injuries to make whisky was improper and highly prejudicial. Levinski v. Cooper (Tex. Civ. App.) 142 S. W. 959, 961, par. 2; Thompson Drug Co. v. Latham (Tex. Civ. App.) 19 S.W.(2d) 825; D. & H. Truck Line v. Lavallee (Tex. Civ. App.) 7 S.W.(2d) 661, 663, par. 1, and authorities there cited; Jordan v. Massey (Tex. Civ. App.) 134 S. W. 804, 806, 807. The effect of the argument above quoted was, not only to intimate that appellant was interested in or participated in the operation of said still, but also to brand him as an habitual violator of the prohibition laws, without any evidence whatever in the record on which such accusations could be based. The argument further erroneously told the jury that appellee had a right to shoot appellant merely because he was trying to evade arrest, and lauded appellee for doing so. Such argument was highly inflammatory and calculated to prejudice both appellant and his claim for compensation for his injuries. Improper argument requires a reversal of the judgment, if, under all the circumstances, there is any reasonable doubt of the harmful effect thereof. Whether there is such doubt is a question of law and not of fact. Bell v. Blackwell. (Tex. Com. App.) 283 S. W. 765, 766, et seq. The rule so stated was quoted and expressly approved in the case of Hubb Diggs Co. v. Bell, 116 Tex. 427, 293 S. W. 808, 809, 810. See, also, Floyd v. Fidelity Union Casualty Co. (Tex. Com. App.) 24 S.W.(2d) 363; Kirby Lumber Co. v. Youngblood (Tex. Civ. App.) 192 S. W. 1106, 1109, par. 6; Trueheart v. Parker (Tex. Civ. App.) 257 S. W. 640, 642, par. 6; Denison Cotton Mill Co. v. McAmis (Tex. Com. App.) 215 S. W. 442, 443, par. 2; Kansas City, M. & O. Ry. Co. v. Swift (Tex. Civ. App.) 204 S. W. 135, 136, pars. 9 and 10; Hunstock v. Roberts (Tex. Civ. App.) 65 S. W. 675, 677; Texas & P. Ry. Co. v. Rea, 27 Tex. Civ. App. 549, 65 S. W. 1115, 1116; Missouri, K. & T. Ry. Co. of Texas v. Wood (Tex. Civ. App.) 91 S. W. 803, 804; Missouri, K. & T. Ry. Co. v. Huggins (Tex. Civ. App.) 61 S. W. 976; Garritty v. Rankin (Tex. Civ. App.) 55 S. W. 367, 368; Chicago, R. I. & G. Ry. Co. v. Goodrich (Tex. Civ. App.) 136 S. W. 81, 84, par. 2. We have in this case, as suggested by some of the foregoing authorities, reviewed the testimony introduced in connection with the findings of the jury thereon. We have reached the conclusion that, under all the cir-

cumstances, it cannot be said that there is no reasonable probability that the verdict rendered was affected by such argument. We refrain from discussion of this phase of the case in view of another trial.

Our holdings on the issues above discussed and the disposition made of the case render consideration of other errors assigned unnecessary.

The judgment is reversed, and the cause remanded.